516 F.2d 1278
 Mattie G. DIXON, as Administratrix of the Estate of L. C.
Sherman, Jr., Plaintiff-Appellee,
v.
80 PINE STREET CORPORATION et al., Defendants-Appellees.
Appeal of DEPARTMENT OF BUILDINGS of the CITY OF NEW YORK
and Louis Beck (not an original party to this action).
 No. 841, Docket 74-2643.
 United States Court of Appeals,
Second Circuit.
 Argued April 21, 1975.
Decided May 14, 1975.
 
 Kevin Concagh, New York City (Harry H. Lipsig, Alan J. Taliuaga, New York City, of counsel), for plaintiff-appellee.
 William F. McNulty, New York City (Joseph Onorato, Anthony J. McNulty, New York City, of counsel), for defendant-appellee Adsco Manufacturing Corp.
 Susan S. Belkin, New York City (W. Bernard Richland, Corp. Counsel, City of New York, L. Kevin Sheridan, New York City, of counsel), for appellants.
 Before HAYS, MULLIGAN and TIMBERS, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 This is an appeal from an order of Judge Whitman Knapp, United States District Judge for the Southern District of New York, which denied the motion of the Department of Buildings of the City of New York (Department) for an order of protection, pursuant to Fed.R.Civ.P. 45(b) and (c) and 26(c), quashing a subpoena duces tecum. The order is affirmed.
 
 
 2
 On May 3, 1972 an explosion occurred at 80 Pine Street, New York, New York, which resulted in seven fatalities. A Board of Inquiry was convened by Joseph Stein, then the Commissioner of the Department of Buildings, to inquire into the causes of the accident for the purpose of formulating remedial legislation or regulations to prevent such occurrences in the future, and to determine if there was any violation of the city Building Code or Rules and Regulations relating to Department of Buildings licenses. Numerous persons were called before this Board to give testimony with respect to the explosion. The City did not permit them to appear with counsel but assured them that their testimony would remain confidential.[1]
 
 
 3
 On February 8, 1974 the present wrongful death action, based on diversity of citizenship, was commenced in the Southern District court. On September 19, 1974, Counsel of the Department was served with a subpoena returnable September 30, 1974 to produce for discovery the information noted in the margin.[2] The City moved to quash the subpoena on the grounds of privilege, unreasonableness, undue burden and non-possession of some of the items requested. At a hearing on October 10, 1974, Judge Knapp held that the City had no general privilege to withhold the data requested but referred the matter to Magistrate Jacobs to hear and report further. At the hearing before the Magistrate, counsel for the Department offered to produce the Board's report with the exception of its conclusions and recommendations, and the report of George J. Fischer, a consulting metallurgist who had made an analysis of certain physical evidence. In his report, Magistrate Jacobs recommended that "the City be directed to produce for inspection and copying by all parties to the action, including defendants, the transcripts of the testimony of all witnesses and related exhibits, the physical evidence, and the report of the Board of Inquiry except for its 'conclusions and recommendations,' " and the Fischer report except for its conclusions.
 
 
 4
 On November 14, 1974 Judge Knapp by memorandum and order approved the recommendations of the Magistrate and ordered prompt compliance. On December 23, 1974 the plaintiffs moved for an order pursuant to Fed.R.Civ.P. 45(f) and 37(b) holding the City in contempt for failure to produce the data and on January 8, 1975 the City made a cross-motion for a stay of Judge Knapp's order. On January 13, 1975 Judge Knapp denied the motion for contempt and granted the cross-motion for a stay pending an appeal.
 
 
 5
 A motion to dismiss this appeal, on the ground that the order of the District Court was not a final order, was denied by a panel of this court without opinion on January 14, 1975. We note that the City was not a party in the action below and as to it the discovery order may be deemed final. Cf. United States v. Nixon, 418 U.S. 683, 690-92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).
 
 THE MERITS
 
 6
 It is not contested that, in a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York. Massachusetts Mutual Life Ins. Co. v. Brei, 311 F.2d 463, 465-66 (2d Cir. 1962). The most recent discussion of the privilege doctrine by a New York court involves the very same data which are sought in this case; the occasion was a wrongful death action in the state courts of New York arising from the same catastrophe. In Cirale v. 80 Pine St. Corporation, 35 N.Y.2d 113, 359 N.Y.S.2d 1, 316 N.E.2d 301 (1974), the New York Court of Appeals denied disclosure of this material on the ground that the respondent plaintiffs had failed to comply with N.Y.C.P.L.R. § 3101, which provides that disclosure sought against a non-party may only be had "where the court on motion determines that there are adequate special circumstances." The respondents in that case simply claimed that the results of the Board's investigation were "material and necessary" to the prosecution of their action. The Court found that this claim failed to satisfy the New York statutory requirement of adequate "special circumstances" to allow discovery proceedings against a non-party.
 
 
 7
 We note that the discovery sought here is not pursuant to the C.P.L.R. but rather Rule 26 of the Federal Rules of Civil Procedure, which makes no such distinction between the discovery of a party and of a non-party. Hence, while the substantive question of privilege is governed by the law of New York (as enunciated in Cirale ), the discovery procedure is governed by the Federal Rules, so that the holding of Cirale insofar as it involves an interpretation of C.P.L.R. § 3101 is not controlling here. In sum, there is no obligation on the part of the moving party to establish "special circumstances" as a basis for discovery.
 
 
 8
 With respect to privilege, Cirale noted that whether or not material was to be characterized as privileged depended upon the balancing of the societal interest in redressing private wrongs via litigation, and the governmental interest in keeping the confidence of its inquiry.Thus, the balancing that is required goes to the determination of the harm to the overall public interest. Once it is shown that disclosure would be more harmful to the interests of the government than the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure. While the need of a litigant for the information would present a strong argument for disclosure, the court should balance such need against the government's duty to inquire into and ascertain the facts of a serious accident for the purposes of taking steps to prevent similar occurrences in the future.
 
 
 9
 By our decision today, we do not hold that all governmental information is privileged or that such information may be withheld by a mere assertion of privilege. There must be specific support for the claim of privilege. Public interest is a flexible term and what constitutes sufficient potential harm to the public interest so as to render the privilege operable must of necessity be determined on the facts of each case. Such a determination is a judicial one and requires that the governmental agency come forward and show that the public interest would indeed be jeopardized by a disclosure of the information. Otherwise, the privilege could be easily abused, serving as a cloak for official misconduct.
 
 
 10
 35 N.Y.2d at 118-19, 359 N.Y.S.2d at 5, 316 N.E.2d at 304 (citations omitted) (emphasis supplied).
 
 
 11
 Under Cirale, then, the governmental agency claiming privilege must come forth with "specific support" for the claim. Id. 35 N.Y.2d at 118, 359 N.Y.S.2d at 5, 316 N.E.2d 301. The only pertinent argument raised below or on appeal by the Department in support of the privilege claim is that if the witnesses who testified before the Board of Inquiry cannot depend upon a guarantee of confidentiality, there will be a diminution of candor and spontaneity in such testimony in the future. This argument cannot reasonably be characterized as "specific support" for the claim of privilege with respect to the information sought here. In the hearing before the Magistrate, the attitude of the Department as expressed by its counsel was much more liberal. There was no "serious objection" to producing the data requested except for the conclusions and recommendations of the Board and the Fischer report, which was not the testimony of a witness but a written metallurgical analysis. The Department made available to the parties at the hearing the Report it now seeks to suppress.
 
 
 12
 We were advised on the oral argument that the change of the position of the City on this appeal resulted from the City's apprehension that the opinion below would constitute a precedent denying privilege to data collected by the City in comparable investigations. We believe that this represents a misinterpretation of Cirale. The New York Court of Appeals was careful to point out that the public interest balancing test it espoused was flexible and "must of necessity be determined on the facts of each case." 35 N.Y.2d at 119, 359 N.Y.S.2d at 5, 316 N.E.2d at 304.
 
 
 13
 This is precisely what appellant has failed to do here. It has not purported to show how the revelation of the data sought to be discovered in this case would jeopardize the public interest or would in any way discourage, hinder or embarrass the testimony of those in the future who could not be assured of confidentiality. There is no suggestion that the evidence sought to be suppressed involves any question of security or illegality or such behavior that a witness would be reluctant to testify absent a promise of confidence.[3] On the contrary, instead of the ad hoc explication of justification proposed in Cirale the Department seeks instead to invoke an omnibus policy of privilege based upon a general thesis that all testimony and evidence received under these circumstances involve "candid and spontaneous" responses which must therefore be protected from scrutiny. Aside from the questionable premises of the argument, it is simply inadequate under the Cirale rubric. We are here dealing with a claim by an estate for wrongful death. There is no dispute as to the relevance and utility of the data sought, involving as it does studies made by experts who had access, shortly after the tragedy, to physical evidence which may have been altered or destroyed. It is sought not only by plaintiffs but by the defendant Adsco Manufacturing Co., which manufactured equipment allegedly defective.
 
 
 14
 The Magistrate below examined the pertinent reports and had ample opportunity to inquire and determine whether or not there were any valid grounds for the suppression urged by the Department. In view of the determination by the Magistrate and the acceptance of this report by the District Judge, we fail to find any abuse of discretion in the finding that there was no privilege. Fifth Avenue Peace Parade Comm. v. Gray, 480 F.2d 326, 333 (2d Cir. 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). On the contrary we hold that application of the balancing test of Cirale leads to the conclusion that the societal interest in uncovering the facts which underlie the wrongful death claim here involved is paramount. Whether it also happens to advance the interests of the plaintiff or defendants is immaterial.
 
 
 15
 Affirmed.
 
 
 
 [1]
 Appellee asserts that the Board's ultimate recommendations and proposals were released to the public but that its conclusions and fact findings were not. Be that as it may, this has little bearing on the disposition of the instant case
 
 
 [2]
 1. A full and complete copy of the report prepared by the Board of Inquiries of the City of New York relating to and dealing with the 80 Pine Street explosion occurring on May 3, 1972 at the aforesaid premises
 
 
 [2]
 A list of any and all names and addresses of witnesses appearing and testifying before the aforesaid Board of Inquiries relating to the aforesaid explosion on May 3, 1972
 
 
 [3]
 Any and all files, expansion joints and other apparatus and any other appurtenances which were examined by members of the Board of Inquiries or by experts at their request will a full and complete copy of their report
 
 
 [3]
 While the reluctance of a witness to become an informer, particularly where there is a possibility of reprisal, is understandable and confidentiality may be required to insure his forthright testimony or his safety, there is nothing in the record before us which indicates that this is the case here. All that we can surmise is that there was expert testimony with respect to possible mechanical or structural failure or malfunctioning. The Department has failed even to attempt to explain why this type of data deserves confidentiality