NATIONAL SUPER SPUDS, INC., et al., Plaintiffs,

v.

NEW YORK MERCANTILE EX-CHANGE, et al., Defendants.

COMMODITY FUTURES TRADING COMMISSION and Howard Bodenhamer, Appellants,

v.

NEW YORK MERCANTILE EX-CHANGE, Defendant-Appellee.

In re COMMODITY FUTURES TRAD-ING COMMISSION, Petitioner.

Nos. 343, 400, 401, Dockets 78–3041, 78–6146 and 78–6152.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1978.

Decided Jan. 17, 1979.

Joanne Leveque, Asst. Gen. Counsel, Commodity Futures Trading Com'n, Washington, D. C. (John G. Gaine, Gen. Counsel, Richard E. Nathan, Deputy Gen. Counsel, Frederic T. Spindel, Associate Gen. Counsel, Susan A. Arnold, Washington, D. C., of counsel), for appellants and petitioner.

William E. Hegarty, New York City (Cahill Gordon & Reindel, New York City, Charles Platto, Sandra Baron, Peter Leight and Maurice Mound, Rein, Mound & Cotton, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

Commodity Futures Trading Commission (CFTC or the Commission) and Howard Bodenhamer, Assistant Regional Administrator for Market Surveillance and Analysis in its Eastern Regional Office in New York City, appeal from and, in the alternative, petition for mandamus to vacate an order of the District Court for the Southern District of New York, which directed Bodenhamer to answer certain questions propounded on deposition despite the Commission's claim of governmental privilege.

The class action in which this controversy arose is one of a number of actions now pending in the same court arising out of a default on the May 1976 Maine Potato futures contract that was traded on the New York Mercantile Exchange (the Exchange). Members of plaintiff class had held long positions which they liquidated at prices allegedly depressed by the large short interest that had accumulated. Their complaint, which has been amended and consolidated with three other actions, named as defendants a number of traders, their brokers and also the Exchange. Count VI of the First Amended Consolidated Class Action Complaint, to which the Exchange was the sole defendant, alleged that CFTC had personnel on the floor of the Exchange; that through them and by mail-o-grams CFTC had advised the Exchange of the large short position in the May contract and, in the mail-o-grams, that the short sellers were "required by law to avoid causing artificial prices"; that officers of the Exchange assured CFTC that the short positions would be covered and that, contrary to the Commodity Act, CFTC rules, and its own by-laws and rules, the Exchange had failed to report and concealed violations of the Commodity Act, CFTC rules, and its own by-laws and rules by short sellers and exchange members, had failed to direct that liquidating orders be entered on or before the conclusion of trading with respect to accounts of members which the Exchange knew or should have known would default if not liquidated, but failed and neglected to perform its duties as a contract market with respect to the contract, and failed and neglected to exercise due care to halt manipulative practices with respect to the contract.[1] Before the class action certification the district court had issued an order directing that various cases be coordinated for pretrial discovery proceedings and appointed a special master to conduct these. His rulings were to be subject to review by the district court.

The Exchange sought to depose Mr. Bodenhamer, Dr. Mark Powers, the Commission's Chief Economist during the period in question and now a vice-president of a securities firm which is a defendant in this action, and Thomas Russo, then Director of the Division of Trading and Markets and now in private law practice. Subpoenas had been served on Mr. Bodenhamer and Dr. Powers on behalf of three other defendants; Mr. Russo agreed to testify voluntarily. The obvious purpose of the Exchange in seeking to take these depositions was to

---

[1]. Certain conduct of the Exchange in relation to the May 1976 contract is the subject of an administrative proceeding instituted by the Commission.

obtain evidence that responsible personnel of the Commission, who knew or had access to the same information as the Exchange, had found nothing seriously amiss.[2] Mr. Bodenhamer gave extensive testimony as to what he had observed but, on the advice of Commission counsel, declined to answer certain questions concerning his contemporaneous opinions and views, on the basis of governmental privilege.

After some months the Exchange moved before the special master to compel responses to these questions. CFTC lodged a formal claim of governmental privilege. The special master declined to make a general ruling but stated he would deal with CFTC's objection on a question-by-question basis. In the course of doing this he distinguished between questions asking for opinions and views that Mr. Bodenhamer communicated to other staff members, which the witness would not be required to answer, and questions asking only the witness' own opinion and views, which he was required to answer. Commission counsel instructed Mr. Bodenhamer not to answer questions of the latter sort pending consideration by the district judge. At the conclusion of this deposition, 27 questions—some of them repetitive—remained unanswered.

The Exchange then moved the district judge for an order confirming the rulings of the special master and "directing present and former officials of the Commodity Futures Trading Commission ('CFTC') who were responsible for monitoring trading in the May 1976 Maine Potato Futures Contract (the 'May contract') to respond to deposition questions as to their respective contemporaneous views, opinions, observations, analyses and conclusions with respect to trading in the May Contract . . . ." While the motion was pending, the Commission considered the specific questions that its counsel had instructed Mr. Bodenhamer not to answer, and determined that governmental privilege should be invoked.[3] The district judge made an endorsement sustaining the rulings of the special master and directed the witnesses involved to respond, but indicated he would consider the CFTC's objections at the trial. After an unsuccessful motion for reconsideration or, in the alternative, for a stay pending appeal, the Commission appealed and sought mandamus, and a panel of this court granted a stay.

■ The non-appealability of the ruling directing Mr. Bodenhamer to answer would appear, at first blush, to have been largely settled, so far as this court is concerned, by *Kaufman v. Edelstein*, 539 F.2d 811, 813–14 (2 Cir. 1976).[4] We there said:

> One would have supposed it to be beyond argument that, despite *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S.

---

2. A good deal of material on this subject had been brought out in a statement of William T. Bagley, Chairman of the CFTC, at a hearing on June 21, 1976, before the Subcommittee on Agricultural Production, Marketing, and Stabilization of Prices of the Committee on Agriculture and Forestry, U.S. Senate, 94th Cong. 2d Sess., pp. 28–57.

3. The formal claim of privilege lodged with the court seems unresponsive to the special master's ruling, since it speaks of disclosure of intra-agency communications, and the special master had ruled that these need not be disclosed. The Commission contends that the special master's distinction between Mr. Bodenhamer's own views and his communication of them is of no practical value since if Mr. Bodenhamer disclosed his own views whether trading activity was or was not abnormal, there would be a basis for inferring that he had communicated these to other CFTC personnel.

4. Although an appeal by a third party from a discovery order was entertained in *Dixon v. 80 Pine Street Corporation*, 516 F.2d 1278, 1280 (2 Cir. 1975), the issue of appealability was not briefed and the panel simply followed a previous panel which had denied a motion to dismiss without opinion. The action of the earlier panel was without precedential effect under our Rule § 0.23, and the *Dixon* panel, by its unexplicated reference to *United States v. Nixon*, 418 U.S. 683, 690–92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), could hardly have meant to imply that the *Nixon* decision had overruled *Alexander v. United States, supra*, and *United States v. Ryan, supra*, which the *Nixon* opinion had cited with approval. *Dixon* was not cited to us in *Kaufman v. Edelstein, supra*, and the writer of the *Dixon* opinion joined in the *Kaufman* decision.

541, 546–47 [69 S.Ct. 1221, 1226, 93 L.Ed. 1528] (1949), 'An order compelling testimony . . . in an ordinary civil or criminal action is neither a final order [under § 1291] nor an interlocutory order granting an injunction [under § 1292(a)(1)] and it is not appealable. This is the oft-cited rule of *Alexander v. United States,* [201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906)].' 9 Moore, Federal Practice ¶ 110.13[2] at 153–54 (Ward ed. 1975). The remedy of the party witness wishing to appeal is to refuse to answer and subject himself to criminal contempt; that of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt. *Id.* at ¶ 110.13[4] at 165–66. We have applied this rule in many cases of non-party witnesses, in one of which, *United States v. Fried,* 386 F.2d 691, 694 (2 Cir. 1967), we specifically rejected a contrary view expressed in *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 996–97 (10 Cir.), *cert. denied,* 380 U.S. 964 [85 S.Ct. 1110, 14 L.Ed.2d 155] (1965)—as four other circuits have done, *Ryan v. CIR,* 517 F.2d 13, 18–20 (7 Cir.), *cert. denied,* 423 U.S. 892 [96 S.Ct. 190, 46 L.Ed.2d 124] (1975); *Gialde v. Time, Inc.,* 480 F.2d 1295, 1300–01 (8 Cir. 1973); *United States v. Anderson,* 150 U.S.App. D.C. 336, 464 F.2d 1390 (1972); *Borden Co. v. Sylk,* 410 F.2d 843, 846 (3 Cir. 1969). The doctrine has since been reaffirmed by a unanimous Court in *United States v. Ryan,* 402 U.S. 530 [91 S.Ct. 1580, 29 L.Ed.2d 85] (1971), and was again recognized in *United States v. Nixon,* 418 U.S. 683, 690–92 [94 S.Ct. 3090, 41 L.Ed.2d 1039] (1974), although the Court, for reasons stated in its opinion which are wholly inapplicable here, made an exception where the subpoena was directed to the President of the United States.

The reasons for the *Alexander* rule are well stated in 9 Moore, *supra,* at 153–56, and need not be repeated here. See also 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3914 at 567–68, 576–77 (1976). Subsequent to the *Kaufman* decision the Supreme Court has again quoted with approval from Mr. Justice Frankfurter's opinion in *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), which, on the basis of *Alexander,* held that an order denying a motion to quash a *subpoena duces tecum* to appear before a grand jury was not appealable. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 n. 8, 98 S.Ct. 2454, 2457 n. 8, 57 L.Ed. 351, 357 n. 8 (1978); see also *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

As against this the Commission, in addition to citing *United States v. Nixon, supra,* 418 U.S. at 690–92, 94 S.Ct. 3090, with which we dealt in *Kaufman v. Edelstein, supra,* urges that we follow the Fifth Circuit in dispensing with the contempt requirement where the government, whether state or federal, asserts governmental or "executive" privilege in cases where it is not a party. See *Cates v. LTV Aerospace Corp.,* 480 F.2d 620, 622 (5 Cir. 1973); *Carr v. Monroe Manufacturing Co.,* 431 F.2d 384, 387 (5 Cir. 1970), *cert. denied sub nom. Aldridge v. Carr,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971); *Overby v. United States Fidelity and Guaranty Co.,* 224 F.2d 158, 162 (5 Cir. 1955). We see no basis for constructing such an exception to *Alexander* broad enough to include this case even if we had power to do so.[5] The principal consideration urged upon us for doing this is that a government agency may not be able to persuade an employee, still less a former employee, to submit to a citation of civil contempt.[6] Because of this, CFTC argues its case resembles *Perlman v. United*

---

5. We likewise disagree with some of the reasoning, although not necessarily with the result, in *McSurely v. McClellan,* 138 U.S.App. D.C. 187, 190–91, 426 F.2d 664, 667–68 (1970). On that discussion we would agree with the dissenting opinion, *id.,* 138 U.S.App.D.C. at 195–96, 426 F.2d at 672–73.

6. We note in passing that the argument proves too much since the same difficulty could be experienced by a business firm—as in *Alexander* itself where the witnesses were corporate officers asserting alleged privileges of the corporation, see 201 U.S. at 120–21, 26 S.Ct. 356.

*States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

*Perlman* was an unusual case. The papers and models there at issue were exhibits alleged to belong to Perlman which a company partly owned by him had submitted in a patent infringement suit brought by it; as a condition to allowing the company to dismiss without prejudice, the district court directed that the exhibits should be impounded and deposited with the clerk of the court, to be opened only by order of the court on notice to each of the parties to the infringement suit. Later, on motion of the United States Attorney on notice to the attorneys for the two corporations but not to Perlman, the court had issued an order directing the clerk to produce the exhibits before a grand jury, which was investigating a charge that Perlman had perjured himself in the patent trial, see *Perlman Rim Corp. v. Firestone Tire & Rubber Co.*, 244 F. 304 (S.D.N.Y.1917); that the United States Attorney should have access to the exhibits at all reasonable times; and that if an indictment should be found, the United States Attorney should have such temporary custody of the exhibits as might be proper. Perlman then moved, in what in effect was a proceeding independent of the discontinued patent suit, although entitled therein in the district court, see 247 U.S. at 12, 38 S.Ct. 417, 244 F. at 304, for an order restraining the United States Attorney from using the exhibits or presenting them to the grand jury. When Perlman appealed the denial of the requested relief to the Supreme Court in what by then had become styled as the independent proceeding that it should have been, the United States moved to dismiss on two grounds, namely, 247 U.S. at 12, 38 S.Ct. at 419:

1. Appellant had no interest in the subject matter of and is not a party to the equity suit out of which the appeal arises;

2. The order of the District Court if considered as a part of the criminal proceeding is not final, but merely interlocutory, and therefore not reviewable by this court.

In overruling the motion the Court said that as to the first ground neither the Government nor Perlman had any interest in the equity suit but that both did in the controversy giving rise to Perlman's motion. With respect to the second ground, the one relevant here, the Court, speaking through Mr. Justice McKenna, observed as follows, 247 U.S. at 12–13, 38 S.Ct. at 419:

The second contention of the government is somewhat strange, that is, that the order granted upon its solicitation was not final as to Perlman but interlocutory in a proceeding not yet brought and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur.

It is hardly surprising that so Delphic a deliverance should give rise to differing interpretations. The original understanding of *Perlman*, both by the Supreme Court, *Cogen v. United States*, 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275 (1929); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 356, 51 S.Ct. 153, 75 L.Ed. 374 (1931), see also *Carroll v. United States*, 354 U.S. 394, 403 & n. 14, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957), and by this court, *United States v. Poller*, 43 F.2d 911 (1930); *In re Cudahy Packing Co.*, 104 F.2d 658 (2 Cir. 1939), had stressed the "independence" of Perlman's motion from the criminal proceedings. Some tests with regard to independence were stated in *Cogen, supra*, 278 U.S. at 225, 49 S.Ct. at 120:

The independent character of the summary proceedings is clear, even where the motion is filed in a criminal case, whenever the application for papers or other property is made by a stranger to the litigation . . . , or wherever the motion is filed before there is any indictment or information against the movant, like the motions in *Perlman v. United States*, 247 U.S. 7 [38 S.Ct. 417, 62 L.Ed. 950] and *Burdeau v. McDowell*, 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048].

*Burdeau* was an appeal by the Government of an order suppressing and directing the return of evidence upon a motion made before it was used before a grand jury; the issue of appealability was not discussed.

This broad reading of *Perlman* was first narrowed by *Cobbledick v. United States, supra,* 309 U.S. at 323, 60 S.Ct. 540, holding, contrary to this court's *In re Cudahy Packing* decision, *supra,* that the denial of motions to quash grand jury *subpoenas duces tecum* were not appealable and that the witness must first allow himself to be placed in contempt. *Perlman,* however, was approved on the basis that the contempt avenue for ultimately securing review was not available since Perlman was not being required to do anything, 309 U.S. at 328–29, 60 S.Ct. 540; *Burdeau* was distinguished, less convincingly, on the ground that since there the district court had granted relief and it was the Government that appealed, it was the action of the district court and not the appeal that halted the orderly progress of the grand jury, 309 U.S. at 329 n. 6, 60 S.Ct. 540. When this court continued to hold that orders granting or denying pre-indictment motions to suppress under F.R.Cr.P. 41(e) were appealable, the Supreme Court, although conceding the existence in its own decisions, to wit, *Cogen, Cobbledick,* and *Carroll,* of "explanatory dicta that lend support to the rule developed in the Second Circuit", decided that our decisions and presumably its own dicta had been wrong in upholding appealability "[w]hen at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment . . ." *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent." *Id.* at 131–32, 82 S.Ct. at 66. Such broad language would seem to have spelled the doom of *Perlman,* and also of *Burdeau* insofar as that decision can be regarded as having held anything about appealability, although they were not even cited.

However, predictions of *Perlman's* demise would have been as exaggerated as those of Mark Twain's. Although *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), refused to recognize an exception to *Cobbledick* in a case where compliance with a grand jury subpoena would cause a substantial burden, the Court approved *Perlman* on much the same basis propounded in *Cobbledick,* namely, that Perlman, unlike Ryan, did not have a means of challenging the subpoena by being put in contempt. *Id.* at 533, 91 S.Ct. 1580. The statement in *United States v. Nixon, supra,* 418 U.S. at 691, 94 S.Ct. at 3099, on which CFTC relies, elaborated on the *Cobbledick-Ryan* rationalization of *Perlman* as resting on the basis that "it was unlikely that the third party would risk a contempt citation in order to allow immediate review of the appellant's claim of privilege." In fact it was not only "unlikely" but unimaginable. The only third party who could have helped Perlman was the clerk of the District Court for the Southern District of New York and we do not exactly see that clerk defying an order of then District Judge Learned Hand in order to assist the target of a grand jury perjury investigation.

█ We find no parallel to this in regard to Mr. Bodenhamer—a responsible CFTC employee who has dutifully followed the instructions of Commission counsel not to answer the questions at issue and has joined in the appeal.[7] He has not foreclosed the

---

7. We recognize that the present version of the *Perlman* exception to the *Alexander-Cobbledick* rule has been extended by some courts to appeals of orders denying motions to quash subpoenas directed at employees of the person asserting the privilege. See *United States v. Doe,* 455 F.2d 753, 757 (1 Cir.), *vacated and remanded on other grounds sub nom. Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); compare *Gialde v. Time, Inc., supra,* 480 F.2d 1295. Whatever the validity of this exception may be in cases where the third party is disinterested or independent, e. g., *In re Grand Jury Impaneled January 21, 1975,* 541 F.2d 373 (3 Cir. 1976) (refusal to quash subpoena for attorney retainer agreements directed to prothonotary of local court); *Overby v. United States Fidelity & Guaranty*

possibility that he will submit to contempt in order to preserve the Commission's right to appellate review if, on further reflection, the Commission considers the issue here to be all that important.[8] Although not all federal employees may be as stout-hearted as was then General Counsel Timbers of the SEC in the proceedings reviewed in *Appeal of United States Securities and Exchange Comm'n*, 226 F.2d 501 (6 Cir. 1955), it is also true that district judges do not ordinarily act in so Draconian a fashion as the judge in that case improperly did, see *id.* at 520; *cf. Chapman v. Goodman*, 219 F.2d 802, 807 (9 Cir. 1955). When a present or former Government employee makes a non-frivolous assertion of governmental privilege at his agency's request, citation for civil contempt without any other immediate sanction pending prompt application for review will ordinarily suffice; if the district court goes further, there is always the possibility of a speedy application to the court of appeals for a stay.[9] If the claim of privilege is sustained on appeal, the citation should be expunged. On the other hand, if the claim is rejected, damages (in a case like this primarily counsel fees, see *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–28, 43 S.Ct. 458, 67 L.Ed. 719 (1923); *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 n. 5 (2 Cir. 1970); *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270 (5th Cir. 1977)), would be an appropriate remedy,

and these should be paid by the Government and not by the employee, see Note, Discovery from the United States in Suits Between Private Litigants—The 1958 Amendment of the Federal Housekeeping Statute, 69 Yale L.J. 452, 460 n. 42 (1960). Even as thus softened the requirement of submission to contempt still serves a useful purpose in curtailing appeals, with consequent delay in litigation such as has occurred here. Both sides benefit from having a second look. The person ordered to respond may decide, as CFTC could well have done here, that the importance of the issue and the risk of adverse appellate determination do not warrant being branded as a contemnor. See *United States v. Wendy*, 575 F.2d 1025, 1030 (2 Cir. 1978). Conversely the person seeking the information, particularly if he is the plaintiff, may decide that the quest is not important enough to seek a contempt citation, thereby entailing the delay of an appeal—a result which the Exchange's brief (p. 2) suggests could well have happened here if CFTC had not appealed. The Commission argues that application of the traditional procedural rules in this case will undercut the substantive policies underlying the governmental privilege. This also proves too much. Every evidentiary privilege reflects a social judgment about the importance of "full and free" disclosure between or among persons

---

*Co., supra,* 224 F.2d at 162 (order to compel president of plaintiff bank to disclose reports of National Bank Examiner over which Secretary of the Treasury, a non-party, claimed privilege); *cf. Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501 n. 14, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (congressional subpoena for plaintiff's financial records directed at bank), it becomes more difficult to sustain where the target of the disclosure order is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges. Compare *Velsicol Chemical Corp. v. Parsons,* 561 F.2d 671 (7 Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978) with *In re Grand Jury Proceedings Concerning Jaskiewicz,* 362 F.2d 942 (3 Cir. 1966).

The Commission might be able to make a better case for appealability if, when Dr. Powers is called, the Exchange should seek to press the questions to which the Commission objects

and Dr. Powers should indicate unwillingness to follow the instructions of Commission counsel, but see note 9 *infra.* We need not anticipate this; when a similar problem arose during the testimony of Mr. Russo, he refused to answer and the Exchange did not pursue the matter before the district court.

8. Compare *Velsicol Chemical Corp. v. Parsons, supra,* 561 F.2d 671.

9. Beyond this we do not now see—although we do not decide the point—why any sanctions could not run against the Chairman or the members of the Commission who would have directed the witness to flout the court's order, rather than against a subordinate employee or former employee complying with such directions. Such a course might have the salutary effect of curtailing attempts to appeal from decisions denying insubstantial or unimportant claims of executive privilege.

in a particular relationship. See McCormick, Evidence 152 (1972). That the contempt requirement may make the governmental privilege somewhat harder to vindicate, and therefore less certain of recognition, than it would be if the disclosure order were appealable, is true with respect to all such claims. Furthermore, as indicated in 9 Moore, *supra*, at 155, "For patent abuse of discretion, or to settle 'new and important problems' respecting the power of the district court, mandamus is available." See also 15 Wright, Miller & Cooper, *supra*, § 3914 at 576–77.

■ This brings us to CFTC's petition for such relief. Its strongest ground is a claim that the district judge did not in fact exercise his discretion and that we should require him to do so. If the premise were sound, the conclusion would follow, *Interstate Commerce Comm'n v. Humboldt S. S. Co.*, 224 U.S. 474, 484–85, 32 S.Ct. 556, 56 L.Ed. 849 (1912); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). The district judge's endorsement is indeed cryptic and we cannot agree with so much of it as seems to assume that the Commission would be fully protected by objection to the use of answers at trial. However, the judge did confirm the ruling of the special master and adhered to this after a motion for reconsideration by CFTC and Mr. Bodenhamer which forcefully urged the points they have made here, and we must assume that he acted only after considering the Commission's objections. Cf. *Jayson v. United States*, 294 F.2d 808, 810 (5 Cir. 1961). Under the circumstances the issuance of mandamus to require the district judge to reconsider the matter would only produce further delay.

In holding in *Kaufman v. Edelstein, supra*, 539 F.2d at 816–22, that neither "supervisory" nor "advisory" mandamus were there available, we took as our guide the "touchstones" stated in *American Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282–83 (2 Cir. 1967), also a discovery case, on the basis of *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). These were "usurpa-

tion of power, clear abuse of discretion, and the presence of an issue of first impression." We need not here consider whether the plurality opinion in *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 2559–60, 57 L.Ed.2d 504 (1978), requires an even narrower standard, since this case does not measure up to those stated in *American Express*. Clearly there was no "usurpation of power." Neither was there "an issue of first impression." The parties agree that the governmental privilege asserted here does exist but that even if Mr. Bodenhamer's conclusions and observations are within it, the Government's need for confidentiality must be balanced against the litigant's need for evidence to assist in the defense or prosecution of the case. See *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C.1966), *aff'd mem. sub nom. V. E. B. Carl Zeiss, Jena v. Clark*, 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). The question is simply one of applying these acknowledged principles. Finally we discern no "clear abuse of discretion." The special master sustained the claim of governmental privilege with respect to intra-agency communications, and the Government did not assert one with respect to "facts within" Mr. Bodenhamer's "knowledge." The debated area was the intermediate one of the witness' views and opinions, something which in the context of this case differed from "facts within his knowledge" only by a hair's breadth. Whether the special master's rulings were right or wrong, no significant national interest will suffer from disclosure of Mr. Bodenhamer's views, particularly in light of the disclosures already made by Chairman Bagley to the Senate Subcommittee, see note 2 *supra*, in the contingency that Mr. Bodenhamer should refuse to submit to a contempt citation and elect to comply with the directions of the special master and the district judge. In sum, this is not one of those "really extraordinary causes" for which mandamus is reserved. *Ex parte Fahey*, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

The appeal is dismissed for want of appellate jurisdiction; the petition for mandamus is denied.