In re: SECURITY AND EXCHANGE COMMISSION ex rel. Helene GLOTZER and Jill Slansky, and Helene Glotzer and Jill Slansky, Petitioners.

Securities and Exchange Commission, ex rel. Helene Glotzer and Jill Slansky, Movants,

Todd Semon, On behalf of himself and all others similarly situated, Thomas Pratt, Rex Weimer, Howard Rosen, on behalf of himself and all others similarly situated, Donald Mackinnon, on behalf of himself and all others similarly situated, Ivan Crnkovich, on behalf of himself and all others similarly situated, Barbara Crnkovich, on behalf of herself and all others similarly situated, Plaintiffs,

v.

Martha Stewart, Living Omnimedia, Inc., Defendant.

Docket No. 03–3125.

United States Court of Appeals, Second Circuit.

Argued Dec. 23, 2003.

Decided July 6, 2004.

Samuel M. Forstein, Assistant General Counsel (Giovanni P. Prezioso, General Counsel, Thomas J. Karr, Special Trial Counsel, and Kathleen Cody, Senior Counsel, on the brief), Securities and Exchange Commission, Washington, D.C., for Petitioners.

Barbara Moses (Robert G. Morvillo, Tracey Kitzman, and Gregory Morvillo, on the brief), Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, for Defendant.

Before: WALKER, Chief Judge, CALABRESI and CABRANES, Circuit Judges.

JOHN M. WALKER, Jr., Chief Judge.

The Securities and Exchange Commission ("SEC") petitioned on behalf of and along with SEC attorneys Helene Glotzer and Jill Slansky for a writ of mandamus to vacate the order of the United States District Court for the Southern District of New York (John E. Sprizzo, *Judge* ) granting Martha Stewart's motion to compel

compliance with a subpoena *ad testificandum.* On December 24, 2003, we issued an order granting the petition on the ground that the district court lacked subject matter jurisdiction to consider Ms. Stewart's motion to compel. This opinion sets forth the reasons for that ruling.

## BACKGROUND

The underlying securities fraud action was brought in August 2002 by shareholders of Martha Stewart Living Omnimedia, Inc. ("MSO") against MSO and several MSO executives, including Martha Stewart herself. The plaintiffs in that action allege that Stewart made false statements concerning her sale of shares in an unrelated company, ImClone Systems, Inc., and that those statements artificially inflated the value of MSO's shares, in violation of the federal securities laws.

On June 4, 2003, while the class action was pending, Stewart and her stockbroker, Peter Bacanovic, were indicted by the United States Attorney's Office for the Southern District of New York. On the same day, the SEC commenced a civil enforcement proceeding against Stewart and Bacanovic. The criminal indictment and the SEC's complaint contained many of the same allegations that appear in the class action complaint.

In view of these developments, the parties in the class action suit agreed to stay any discovery by and against Stewart until the criminal case against her had been resolved. The district judge, however, rejected their agreement and directed that Stewart conduct any discovery she desired. On October 21, 2003, Stewart[1] served subpoenas *ad testificandum* on Slansky and Glotzer, who had interviewed Stewart and Bacanovic in connection with the SEC enforcement proceeding and who had been designated as witnesses for the United States in the criminal case against Stewart.

On November 3, 2003, the SEC's Assistant General Counsel, Samuel M. Forstein, wrote a letter to Stewart informing her that, under SEC regulations, Slansky and Glotzer could not testify unless authorized by the SEC. In his letter, Forstein questioned both the propriety of seeking to depose these witnesses and the relevance of any testimony they might offer. Nevertheless, Forstein requested that Stewart "set forth in writing the questions that [she] intend[ed] to cover in each of these depositions." Stewart's attorneys declined to comply with this request, but explained orally that they wished to inquire about the witnesses' knowledge of the allegations contained in the class action complaint and their recollection of the interviews they had conducted with Stewart, Bacanovic, and Bacanovic's assistant, Douglas Faneuil.

By letter dated November 4, 2003, the SEC's Associate General Counsel, Richard M. Humes, transmitted his decision declining to authorize the depositions of Glotzer and Slansky. Humes explained that depositions of opposing counsel are disfavored, *see United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 185 (2d Cir.1991) (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986)), and that, in the SEC's opinion, the prerequisites for permitting such depositions had not been met in this case. Principal among the SEC's concerns was that the information gleaned from Glotzer and Slansky's testimony would be subject to the attorney work product privilege.

---

**1.** The official caption in this case might give the impression that MSO was the party that issued the offending subpoenas. In fact, it was Stewart who did so, and Stewart alone submitted an answer to the petition for a writ of mandamus.

On November 17, 2003, Stewart moved the district court to compel compliance with the subpoena. In opposing the motion, the SEC argued that Stewart's failure to exhaust her administrative remedies under § 704 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, precluded her from bringing a motion to compel. Immediately following oral argument on December 5, 2003, the district judge granted Stewart's motion. He concluded, among other things, that the APA's administrative exhaustion requirement did not apply. He then ordered the witnesses to appear, on pain of contempt, and indicated that he would deal with any particular claims of privilege as they arose.

On December 15, 2003, the SEC filed an emergency motion with this court seeking a stay of the district court's order and a petition for a writ of mandamus. On December 23, 2003, we heard oral argument. The next day, we issued an order granting the petition for a writ of mandamus, vacating the district court's order for lack of jurisdiction, and dismissing as moot the motion for a stay. We also announced that this opinion would follow.

## DISCUSSION

### I. Availability of the Writ of Mandamus

■ The writ of mandamus is "meant to be used only in the exceptional case." *In re von Bulow*, 828 F.2d 94, 96 (2d Cir.1987) (internal quotation marks omitted). Pretrial discovery orders like the one issued by the district court in this case generally are not reviewable on direct appeal, and " 'we have expressed reluctance to circumvent this salutary rule by use of mandamus.' " *United States v. Coppa (In re United States)*, 267 F.3d 132, 137 (2d Cir.2001) (quoting *In re W.R. Grace & Co.*, 984 F.2d 587, 589 (2d Cir.1993)). Nevertheless, mandamus may be available where

" 'a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment.' " *von Bulow*, 828 F.2d at 97 (quoting *Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir.1967)). More specifically, "we will entertain a petition for a writ of mandamus ... to cure a defective pretrial discovery order if the petitioner demonstrates '(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice.' " *Coppa*, 267 F.3d at 137–38 (quoting *In re United States*, 903 F.2d 88, 89 (2d Cir.1990)); *see Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir.1992).

■ Applying these criteria to the case before us, we conclude that the extraordinary writ of mandamus is available here. First, as discussed more fully below, the question of law presented by this petition is both novel and significant. Neither this circuit nor any other has squarely addressed whether the APA's administrative exhaustion requirement, 5 U.S.C. § 704, applies to a motion to compel a government agency to comply with a subpoena *ad testificandum*, and resolution of that question will lend structure to the procedural framework for adjudicating discovery disputes involving government agencies.

■ Second, because the district court's order is not immediately appealable, mandamus is the only adequate means available to the SEC for protecting its interests. Absent mandamus, the SEC would either have to comply with the district court's order and forgo enforcement of its own administrative procedures or risk contempt for failure to comply. *See Coppa*, 267 F.3d at 138–39 (noting similar dilemma

faced by the Government in a criminal case). We recognize that, generally, a litigant who wants to challenge a discovery order must disobey the order, be held in contempt of court, then bring an appeal; mandamus is not usually appropriate where such path is available. *See, e.g., In re Dep't of Investigation of City of New York*, 851 F.2d 65, 69 (2d Cir.1988). But, under these somewhat unusual circumstances, the disobedience-and-contempt route to appeal does not present an adequate remedy. First, the SEC is not just arguing that the district court abused its discretion; it is asserting that the court entirely lacked jurisdiction to consider the motion to compel. If the SEC is correct in its assertion, then the district court improperly interfered with agency authority, and the need for relief is more pressing than it would be absent a jurisdictional issue. Second, and relatedly, there is a marked difference between requiring a private litigant to submit to a contempt order before seeking appellate relief and requiring executive agency officials to do so; the latter case raises the prospect of " 'serious repercussions for the relationship between two coequal branches of government.' " *In re FDIC*, 58 F.3d 1055, 1060 n. 7 (5th Cir.1995) (quoting *In re United States*, 985 F.2d 510, 513 (11th Cir.) (per curiam), *cert. denied*, 510 U.S. 989, 114 S.Ct. 545, 126 L.Ed.2d 447 (1993)). We think these two factors, taken together, render the disobedience-and-contempt

route inadequate to protect the SEC's interests.[2]

Third, resolution of the issue presented by the SEC's petition will aid in the administration of justice. There are no cases directly addressing the issue, and the few circuit courts that have considered the relevance of APA provisions in circumstances like these have disagreed about their applicability. *See* Part II, *infra*.

Having determined that the writ is available, we turn next to the merits of the SEC's petition. We note that the SEC has presented a wide variety of arguments in support of its petition, and that the parties have vigorously contested whether, for example, the district court abused its discretion by compelling attorneys who represent the SEC in a civil enforcement action against Stewart, and who were designated as witnesses against Stewart in her criminal trial, to testify in a civil class action suit on pain of contempt. Because we conclude that the district court lacked jurisdiction to consider the motion to compel in the first instance, we need not (and do not) reach these other issues.

## II. Exhaustion of Administrative Remedies

■ SEC regulations plainly require a litigant in Stewart's position to navigate administrative channels before bringing an action in federal court to enforce a subpoena. Pursuant to those regulations, the

**2.** Stewart cites *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 180 (2d Cir.1979), for the proposition that availability of the disobedience-and-contempt route necessarily precludes issuance of a writ of mandamus where the person or entity seeking the writ is a non-party governmental official or body. But the passage Stewart cites from *National Super Spuds* addresses the availability of a direct appeal, not mandamus. *Compare id.* (discussing appealability) *with id.* at 181 (discussing availability of mandamus).

Elsewhere in the opinion, the court plainly acknowledges that even though disobedience of the court's order and a contempt citation are required before a direct appeal can be taken, mandamus may nevertheless be available *prior* to a direct appeal " '[f]or patent abuse of discretion, or to settle 'new and important problems' respecting the power of the district court.' " *Id.* at 181 (quoting 9 Moore, *Federal Practice*, ¶ 110.13(2), at 155 (Ward ed.1975)).

SEC's General Counsel possesses delegated authority to "[a]pprove non-expert, non-privileged factual testimony by present or former staff members ... when validly subpoenaed" and to "assert governmental privileges on behalf of the [SEC]" in response to such subpoenas. 17 C.F.R. § 200.30–14(f). Any officer or employee of the SEC "who is served with a subpoena requiring the disclosure of confidential or non-public information or documents shall," absent the General Counsel's authorization, "decline to disclose the information or produce the documents called for." 17 C.F.R. § 200.735–3(b)(7)(ii). "Any person aggrieved" by the General Counsel's refusal to authorize compliance with a subpoena must, as "a prerequisite to the seeking of judicial review," first file a petition with the SEC for review of such decision. *See* 17 C.F.R. §§ 201.430(a), (c). That petition must be filed within ten days following the issuance of the General Counsel's decision. 17 C.F.R. § 201.430(b)(1) & (2).

■ In an action brought pursuant to the APA and in which APA § 704 applies, compliance with this intra-agency review procedure is mandatory. *Cf. Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998) (distinguishing mandatory from judicially-imposed exhaustion requirements). APA § 704 provides that judicial review is available only for "final agency action," and that

> [e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a de-

claratory order, for any form of reconsideration, or, *unless the agency requires by rule and provides that the action meanwhile is inoperative,* for an appeal to superior agency authority.

5 U.S.C. § 704 (emphasis added). This section "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule." *Darby v. Cisneros,* 509 U.S. 137, 147, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993); *see Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40, 46 & n. 4 (2d Cir.1993) (compliance with mandatory exhaustion requirement contained in agency regulation is a prerequisite to judicial review). Absent exhaustion, the SEC's decision is neither "final" nor "subject to judicial review." *See Darby,* 509 U.S. at 146, 113 S.Ct. 2539.

Stewart does not deny that she failed to file a petition with the SEC for review of the Associate General Counsel's November 4, 2003 decision and thus failed to exhaust her administrative remedies under 17 C.F.R. § 201.430(c). But she claims that her failure in this respect did not deprive the district court of jurisdiction to hear her motion to compel because APA § 704, through which 17 C.F.R. § 201.430(c) is enforced, does not apply here. Stewart's argument hinges on her interpretation of our decisions in *EPA v. General Electric Co.,* 197 F.3d 592 (2d Cir.1999) ("*EPA v. GE I* "), and *EPA v. General Electric Co.,* 212 F.3d 689 (2d Cir.2000) ("*EPA v. GE II* ").

In *EPA v. GE I,* we held that an agency's refusal to comply with a subpoena *duces tecum* was an "agency action" reviewable under APA § 702[3] and that the

---

**3.** APA § 702 provides in relevant part as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judi-

cial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not

APA's standard of review provision, 5 U.S.C. § 706(2)(A),[4] should be used to evaluate the propriety of that action. *EPA v. GE I*, 197 F.3d at 598–99. On rehearing, however, we withdrew our ruling concerning APA § 706(2)(a) and specifically declined to resolve whether the standard contained therein or, alternatively, the standard contained in Fed.R.Civ.P. 45[5] should govern review of the agency's refusal to comply. *See EPA v. GE II*, 212 F.3d at 690. Stewart argues that our decision in *EPA v. GE II* should be read as a disavowal of the proposition that APA "standards of review," which she claims include the administrative exhaustion requirement of APA § 704, apply to motions to compel agency compliance with discovery requests. We are not persuaded.

■ *EPA v. GE I*'s holding that motions to compel agency compliance with subpoenas are "agency action[s]" reviewable under APA § 702 remains good law. That holding is grounded in the doctrine of sovereign immunity. Absent a waiver of sovereign immunity, a federal agency, as representative of the sovereign, cannot be "compel[led] . . . to act." *EPA v. GE I*, 197 F.3d at 597.[6] But the federal government, in enacting the APA, waived its immunity with respect to those "action[s] in a court of the United States" which seek review of "agency action." *See* 5 U.S.C. § 702. In *EPA v. GE I*, we held that a motion to compel agency compliance with a subpoena qualified as an "action" seeking review of "agency action" for purposes of APA § 702, and, therefore, that a federal court's consideration of such a motion did not violate sovereign immunity. *See* 197 F.3d at 599.[7]

be dismissed nor relief therein be denied on the ground that it is against the United States . . . .
5 U.S.C. § 702.

4. APA § 706(2)(A) provides that a court reviewing agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

5. Fed.R.Civ.P. 45(c)(3) describes the circumstances in which, in the usual case, a court should quash or modify a subpoena—*e.g.*, where the subpoena "fails to allow reasonable time for compliance" or "subjects a person to undue burden." If applied to the case in which an agency refuses to comply with a subpoena, the burden would be on the agency to demonstrate that one of these enumerated grounds existed.

6. The court in *EPA v. GE I* noted that the subpoena in that case was directed at a subordinate agency employee, rather than the agency, and that this fact might have rendered the subpoena unenforceable under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (holding that a subordinate agency employee cannot be compelled to comply with a subpoena *duces tecum* where a valid agency regulation prohibits such compliance in the absence of agency authorization, and where no authorization has been granted). But the court concluded that the *Touhy* rule did not apply because the ultimate agency decision-maker, *i.e.*, the designee of the EPA's General Counsel, was the one who actually responded to the subpoena. *EPA v. GE I*, 197 F.3d at 597. Similarly, in this case, even though the subpoena was directed at Glotzer and Slansky individually, the refusal to comply therewith issued, ultimately, from the authorized agency decision-maker (the designee of the SEC's General Counsel). Accordingly, *Touhy* does not control.

7. Stewart suggests, albeit without much discussion, that the sovereign immunity concerns discussed in *EPA v. GE I* do not come into play here because a motion to compel an agency employee's *testimony*, as opposed to a motion to compel agency documents, does not "restrain the Government from acting, or compel it to act," *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (internal quotation marks omitted) (quoted in *EPA v. GE I*, 197 F.3d at 595), and thus does not implicate the agency's sovereign immunity. Accordingly, in Stewart's view, there is

As Stewart correctly points out, the court in *EPA v. GE I* did not mention the administrative exhaustion requirement of APA § 704, and it expressly declined, in *EPA v. GE II*, to decide whether the APA's standard of review, 5 U.S.C. § 706(2)(A), should govern the district court's evaluation of the EPA's refusal to comply with the subpoena. *See* 212 F.3d at 690. Moreover, some of our sister circuits have affirmatively held that APA § 706 does not apply to motions to compel agency compliance with subpoenas. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778–79 (9th Cir.1994); *see also Linder v. Calero–Portocarrero*, 251 F.3d 178, 180–81 (D.C.Cir.2001). But neither the court's failure in *EPA v. GE I* to discuss APA § 704 nor cases declining to apply APA § 706 in circumstances like these support Stewart's argument that exhaustion of administrative remedies is optional.

First, the question of whether a party seeking to compel compliance with a subpoena must exhaust her administrative remedies before resorting to judicial review was never raised in *EPA v. GE I* or *EPA v. GE II*, and we draw no inferences from the court's silence on the matter. Second, the administrative exhaustion requirement contained in APA § 704 is not, as Stewart suggests, a "standard of review" akin to that contained in APA § 706; it is a procedural prerequisite to review

no need to rely on the APA for jurisdiction and, by extension, no justification for imposing on her the APA's exhaustion requirement. We cannot agree with this analysis. As Stewart concedes, the motion to compel is aimed at the ultimate agency decision-maker; its purpose is not to direct the subordinate agency employee to testify, but to direct the SEC's Office of General Counsel to authorize that testimony. This, no less than a motion to compel documents, constitutes an attempt to compel the agency to act. *See Dugan*, 372 U.S. at 620, 83 S.Ct. 999.

under the APA. *See Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir.1999); *see also COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 274–75 (4th Cir.1999) (applying APA § 704 to motion to compel compliance with a subpoena directed at a government agency). APA § 704 imposes a substantive limitation on the ability of the federal courts to entertain APA claims. This limitation serves an important purpose:

> [to] allow[ ] the agency an opportunity to apply its expertise and correct its mistakes, ... avoid[ ] disrupting the agency's processes, and ... relieve[ ] the courts from having to engage in piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary.[8]

*Air Espana*, 165 F.3d at 152 (quoting *DRG Funding Corp. v. Sec. of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C.Cir.1996)) (internal quotation marks omitted). Because APA § 704 and APA § 706 serve vastly different functions, we decline Stewart's invitation to analogize the question presented on this petition with the question of whether APA § 706 governs courts' review of agency non-compliance with discovery requests—a question which is, in any event, far from settled. *Compare Linder*, 251 F.3d at 180–81 (holding that APA § 706 does not apply to motions to

**8.** Because the purpose of APA § 704 is to allow the agency a full opportunity to consider and correct its own mistakes, the agency may waive otherwise applicable exhaustion requirements where it deems fulfillment of those requirements to be unnecessary. The agency's action would then be "final," and subject to APA review. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 766–67, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (finding that an analogous prerequisite to judicial review under the Social Security Act could be waived).

compel agency compliance with subpoena *duces tecum* ); *Exxon Shipping Co.,* 34 F.3d at 778–79 (same), *with COMSAT,* 190 F.3d at 277 (holding that because a federal court's power to review an agency's refusal to comply stems solely from APA § 702, such power must be exercised in accordance with the other provisions of the APA, including APA § 706); *Edwards v. U.S. Dep't of Justice,* 43 F.3d 312, 315 (7th Cir.1994) (reviewing motion to compel pursuant to standards set forth in APA § 706(2)(A)).

■ Addressing the narrow question presented by this petition, we hold that a party seeking judicial review of an agency's non-compliance with a subpoena must first exhaust his or her administrative remedies pursuant to APA § 704. Judicial review under APA § 702 is expressly conditioned, under APA § 704, on the existence of a "final" agency action. *See, e.g., Darby,* 509 U.S. at 146, 113 S.Ct. 2539 ("When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is 'final' . . . and therefore 'subject to judicial review' . . . ."). Thus, it necessarily follows that a party seeking to invoke the court's limited power to review agency action under APA § 702 must first exhaust her administrative remedies.

Here, Stewart failed to exhaust her administrative remedies. As such, the SEC's actions were not subject to APA review, and the APA's waiver of sovereign immunity did not apply. In the absence of an applicable waiver of sovereign immunity, the district court lacked subject matter jurisdiction to consider her motion to compel. The criteria for issuance of a writ of mandamus having been satisfied in this case, the SEC's petition is granted and the district court's order compelling the SEC to comply with the subpoena *ad testificandum* served on SEC attorneys Slansky

and Glotzer is vacated for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the SEC's petition for a writ of mandamus is GRANTED and the district court's December 5, 2003 order compelling compliance with the October 21, 2003 subpoena is VACATED. The SEC's motion to stay the district court's order is DENIED as moot.