AIR ESPANA, d/b/a/ Air Europa, Air India Limited, d/b/a Air India, Compagnie Nationale Air France, d/b/a Air France, Deutsche Lufthansa AG, d/b/a/ Lufthansa German Airlines, EL–AL Israel Airlines, Ltd., d/b/a EL–AL Israel Airlines, Finnair OY d/b/a/ Finnair, Flugleidir, h.f., d/b/a Icelandair, Iberia Lineas Aereas De Espana, S.A., d/b/a Iberia Airlines of Spain, Osterreiche Luftverkehrs AG, d/b/a Austrian Airlines, Tower Air, Inc., d/b/a Tower Air, United Airlines, Inc., d/b/a United Airlines and Virgin Atlantic Airways, Ltd., d/b/a Virgin Atlantic Airways, Plaintiffs–Appellants,

v.

Una BRIEN, Director, National Fines Office, Immigration and Naturalization Service, Doris Meissner, Commissioner, Immigration and Naturalization Service, and Janet Reno, Attorney General, United States Department of Justice, Defendants–Appellees.

Docket Nos. 98–6025, 98–6043.

United States Court of Appeals,
Second Circuit.

Argued Aug. 27, 1998.

Decided Jan. 15, 1999.

Jonathan A. Fuchs, (Christina Hagan, on the brief) Hagan, Coury & Associates Brooklyn, New York for Plaintiffs–Appellants.

Scott A. Dunn, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, on the brief)(Zachary W. Carter, United States Attorney for the Eastern District of New York) Brooklyn, New York for Defendants–Appellees.

Before: WINTER, Chief Judge, WALKER and McLAUGHLIN, Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs-appellants, twelve international airlines, appeal from several judgments of the United States District Court for the Eastern District of New York (I. Leo Glas-

ser, *District Judge* ), granting defendants' motion for summary judgment and denying plaintiffs' motions for partial summary judgment, to amend the complaint, for reconsideration, and for relief from judgment. The underlying dispute concerns fines that the United States Attorney General, the Commissioner of the Immigration and Naturalization Service, and the Director of the Service's National Fines Office (collectively, the "INS") imposed on plaintiffs (collectively, the "airlines" or "carriers") for transporting to the United States aliens who lacked proper documentation but who nevertheless were admitted to the United States upon a waiver of the documentation requirements. Despite the fact that the Board of Immigration Appeals (the "BIA"), the entity within the INS charged with adjudicating disputes, had not yet ruled on the airlines' appeals of the INS's assessment of fines the district court found that it had jurisdiction to hear plaintiffs' claims. Over the INS's objection, the district court ruled that plaintiffs need not exhaust administrative remedies within the INS because exhaustion would be futile.

On appeal, the INS has abandoned its position that judicial review was premature. Nevertheless, at oral argument, we *sua sponte* raised our . concern that the district court lacked subject matter jurisdiction and asked the parties to submit additional briefing on this matter. Despite the urging by both parties that we reach the merits of this controversy, we find that the district court lacked subject matter jurisdiction over certain of plaintiffs' claims and therefore vacate so much of the district court's decision as concerns those claims. With respect to the claims that were properly before the district court, we affirm.

## BACKGROUND

The INS has had a long-standing policy of fining airline carriers that bring to this country aliens who lack proper documentation. Section 273 of the Immigration and Naturalization Act (the "INA"), codified at 8 U.S.C. § 1323, makes it unlawful for any transportation company to bring into the United States "any alien who does not have a valid passport and an unexpired visa, if a visa was required

under [the INA] or regulations issued thereunder." 8 U.S.C. § 1323(a)(1). Section 273 of the INA provides for a fine of $3,000 for each alien so brought into the United States, plus an additional assessment equal to the amount paid by the alien "for his transportation from the initial point of departure." 8 U.S.C. § 1323(b).

This case concerns the interpretation of several regulations promulgated under the INA, governing when an alien who lacks required documentation nevertheless may be admitted to the United States upon a waiver of the documentation requirements. These regulations are found at 8 C.F.R. § 211.1 for immigrant aliens (those who have been lawfully admitted for permanent residence), *see* 8 U.S.C. § 1101(a)(20), and at 8 C.F.R. § 212.1 for non-immigrant aliens (all other aliens). The airlines contend that the INS may not impose a fine on carriers for the transportation of aliens who are admitted pursuant to these regulations. According to the INS, its authority to assess fines is independent of its authority to waive documentation requirements in certain cases, such that a waiver in a particular case does not negate the propriety of a fine. At stake are millions of dollars in fines already paid by the airlines between 1988 and 1993, in addition to unspecified sums assessed since 1994 but not yet paid.

From 1988 to 1993, the airlines paid without contest the fines that were assessed for the transportation of non-immigrant aliens who lacked proper documentation. Then in 1993, they began to challenge administratively the fines that were assessed for their transportation of aliens who ultimately were permitted to stay in the United States pursuant to a waiver of the documentation requirements. INA regulations provide a prepayment mechanism for contesting fines, including an appeal to the BIA. *See* 8 C.F.R. §§ 280.12, 280.13. The BIA has not yet ruled on any of the plaintiffs' administrative appeals filed since 1993. In 1994, however, the INS canceled the fines assessed against the airlines for the transportation of non-immigrant aliens between 1993 and 1994 pursuant to the old non-immigrant alien regulation and initiated the administrative process

of changing that regulation. The airlines contend that, in 1994, the INS realized that it could not fine the carriers under the former provision and, instead, instituted a policy of "paroling" rather than granting waivers to undocumented non-immigrant aliens, in order to continue assessing fines against the carriers. The non-immigrant alien provision ultimately was superseded in 1996.

In the district court, the airlines sought a refund of their payments made before 1993 with respect to non-immigrant aliens; a declaration that they may not be fined under either the immigrant or non-immigrant alien regulations when aliens are admitted pursuant to a waiver; and a declaration that the "parole" policy allegedly instituted in 1994 is unlawful. In an opinion dated June 18, 1997, the district court held that the pre–1993 payments with respect to non-immigrant aliens were voluntary and therefore could not be recovered and that plaintiffs' claims with respect to the fines assessed between 1993–1994 for the transportation of non-immigrant aliens were moot, since the fines had been canceled. The district court further held that the immigrant alien provision, 8 C.F.R. § 211.1, permitted the INS to fine a carrier even when an undocumented alien is admitted pursuant to a waiver and that the parole policy alleged to have been instituted in 1994 for non-immigrant aliens, if it existed, would be lawful.

Finally, the district court denied plaintiffs' motion for leave to amend their complaint to add claims challenging the INS's interpretation of the 1996 version of the non-immigrant alien provision. The district court held that the claims would not state a cause of action upon which relief could be granted and therefore that amendment was futile. The district court also denied plaintiffs' motion for leave to amend to add a claim that the BIA had violated the Administrative Procedure Act ("APA") in failing to reach their claims, holding that any such claims would be moot in light of the district court's decision on the merits. In subsequent opinions dated November 26, 1997, and February 11, 1998, respectively, the district court denied plaintiffs' motions for reconsideration and for relief from judgment.

## DISCUSSION

■ We review a district court's determination of subject matter jurisdiction *de novo* and are obliged to examine it even in the absence of an invitation to do so by the parties. *See Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40, 44–45 (2d Cir.1993). Here, the district court incorrectly determined that the majority of the airlines' claims were ripe for judicial review. Specifically, the district court held that plaintiffs need not exhaust administrative remedies because their administrative remedies were futile. In reaching this conclusion, the district court relied heavily on the undisputed delay that has characterized the BIA's handling of similar appeals in the past and on its characterization of the case as turning primarily on a question of statutory interpretation.

■ We disagree with the district court's determination as well as its reasoning. The propriety of judicial review in this case turns not on exhaustion of remedies, but on the finality of agency action. Under the APA, which provides the basis for plaintiffs' claims, "[c]ourts are not free to impose an exhaustion requirement" unless the specific statutory scheme at issue imposes such a requirement. *Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993); *accord Bastek v. FCIC,* 145 F.3d 90, 94 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 539, —— L.Ed.2d —— (1998). Since the INA does not impose such a requirement, *cf.   Ciba–Geigy,* 3 F.3d at 45 (finding that Environmental Protection Act imposed express exhaustion requirement), none will be imposed here, *see Bastek,* 145 F.3d at 94; *Howell v. INS,* 72 F.3d 288, 291 (2d Cir.1995).

■ Nevertheless, other related concerns such as ripeness and the lack of final agency action preclude our review of plaintiffs' post–1993 claims concerning fines imposed for the transportation of non-immigrant aliens. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Howell,* 72 F.3d at 294 (Walker, J., concurring). The Supreme Court has de-

scribed the basic rationale of the ripeness doctrine as follows:

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The APA explicitly requires that an agency action be final before a claim is ripe for review. *See* 5 U.S.C. § 704; *Top Choice Distribs., Inc. v. United States Postal Serv.,* 138 F.3d 463, 466 (2d Cir.1998). This requirement of finality is jurisdictional, *see DRG Funding Corp. v. Secretary of Hous. and Urban Dev.,* 76 F.3d 1212, 1214 (D.C.Cir. 1996), and serves several functions.

> It allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in "piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary."

*Id.* (quoting *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)); *see also Top Choice Distribs.,* 138 F.3d at 466.

The regulatory scheme governing the assessment of fines strongly supports the inference that a decision by the INS to impose a fine on a carrier is not final until the carrier has received a ruling from the BIA or has waived or withdrawn its appeal. *Cf. Mejia–Ruiz v. INS,* 51 F.3d 358, 363 (2d Cir.1995) (holding, in context of deportation proceedings, that there is no final agency action until BIA has ruled or an appeal to BIA is not timely made or is waived). The regulations provide that, once a carrier has been notified of the INS's intention to fine, it has 30 days to file an answer with documentary evidence,

"setting forth the reasons why a fine should not be imposed, or if imposed, why it should be mitigated or remitted." 8 C.F.R. § 280.12. The carrier also may request a personal interview and may submit a brief if it wishes. *See id.* If there is no request for a personal interview, and if either no answer is filed or the answer admits the allegations in the notice, the district director or the Associate Commissioner for Examinations, or the Director for the National Fines Office is directed to "enter such order in the case as he deems appropriate and no appeal from his decision may be taken." 8 C.F.R. § 280.13(a). If a personal interview is requested or directed, or if an answer is filed disputing the allegations in the notice, the case is assigned to an immigration officer, who is directed to "prepare a report summarizing the evidence and containing his findings and recommendation." *Id.* at § 280.13(b).

This report is then forwarded to the district director or the Associate Commissioner for Examinations, or the Director of the National Fines Office, who is directed to "note on the report of the immigration officer whether he approves or disapproves the recommendation of the immigration officer." *Id.* The carrier is then informed in writing of this last decision and, if the decision is that a fine should be imposed, the carrier is informed of the reasons for that decision. *See id.* Finally, a carrier may appeal this decision to the Board of Immigration Appeals within 15 days after the mailing of this notification. *See id.*

█ Under this scheme, the agency action is not final until a carrier has exhausted or waived its right to assert defenses in its answer to the notice of intention to fine and its right of appeal to the BIA. As we noted in *Top Choice Distributors,*

> "[a]s a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow."

138 F.3d at 466 (quoting *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997)).

The foregoing regulations lead to the conclusion that the INS's decisionmaking process is not complete until the appeal is decided by the BIA. To be sure, the dispute resolution process provides for an early resolution if the carrier abandons its claims, but otherwise it consists of a refinement of the issues for BIA determination. Our view that pre-BIA activity is interlocutory is supported by other INS regulations that define final agency action as action by the BIA, in the absence of waiver or delay by the affected party. *See, e.g.*, 8 C.F.R. §§ 3.1(d)(2) and 3.4. Moreover, the rights and obligations of the parties, from which legal consequences may flow, are unaffected until the BIA has rendered its decision on the appeal. 8 C.F.R. § 3.6(a) explicitly provides for a stay of the effect of any decision from which an appeal is pending before the BIA. Accordingly, the fines that the INS has assessed against the carriers may not be considered due, nor will they be collected, until the BIA has ruled in favor of the INS.

Denying the airlines judicial review prior to BIA determination therefore does not impose a serious hardship. *See DRG Funding Corp.*, 76 F.3d at 1215–16. The airlines need not alter their behavior in anticipation of the BIA's ruling. *Cf. Ciba–Geigy Corp. v. United States EPA*, 801 F.2d 430, 438–39 (D.C.Cir.1986) (plaintiff forced to choose between immediate compliance with EPA labeling requirement, which it believed would lead to a substantial loss in sales, and exposure to serious civil and criminal penalties for noncompliance). The airlines' obligation to screen passengers for proper documentation, imposed by § 273 of the INA, remains the same regardless of the BIA's ultimate interpretation of the pertinent regulations; all that remains undecided pending the BIA's decision is the propriety and sum of fines that have been imposed when, despite their efforts, the airlines failed to screen out aliens lacking proper documentation.

In light of the foregoing, we vacate the district court's decision with respect to those post–1993 claims regarding payments for the transportation of non-immigrant aliens, as to which the airlines have initiated the administrative appeals process in a timely fashion. On remand, we leave it to the district court to determine which fines were appealed administratively in a timely fashion and instruct the district court that, as to these claims, an order to the INS and/or the BIA to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), is the appropriate remedy. Included among the claims subject to BIA determination in the first instance are plaintiffs' claims that challenge the validity of the parole policy allegedly initiated in 1994. We agree with the district court that plaintiffs' claims arising out of those fines that were canceled by the INS in 1994 are moot.

With respect to the claims that remain, the pre–1993 fines for the transportation of non-immigrant aliens that the airlines paid without contest, we affirm the district court's conclusion that these payments were made voluntarily and cannot be recovered. Plaintiffs' claims with respect to these payments are ripe for review, since the time for administrative appeals has long since expired. Nevertheless, the airlines are not entitled to the relief they seek. " 'Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefore ... such payment must be deemed voluntary and cannot be recovered back.' " *Cunard S.S. Co. v. Elting*, 97 F.2d 373, 377 (2d Cir.1938) (quoting *Union Pac. R.R. Co. v. Dodge County Comm'rs*, 98 U.S. 541, 543–44, 25 L.Ed. 196 (1878)).

The airlines were informed at the time that they were served with the notices of intention to fine that they had a right to an administrative appeal, but chose not to pursue that option. The record does not support the airlines' contention on appeal that, at the time the fines were assessed, the airlines were unaware of the facts that would have led them to contest the fines—namely that certain of their passengers were admitted pursuant to waivers. Nor do we find any support for the airlines' contention that they relied on the advice of INS officials that an

undocumented alien's admission pursuant to a waiver would not relieve the carrier of responsibility for a fine. The only information that the airlines received from the INS to that effect was the notice of intention to fine, which set forth the INS's interpretations of pertinent BIA rulings.

One such interpretation stated that "the fact that an alien was eventually admitted" pursuant to a waiver did not relieve a carrier of liability. While this notice probably did not give the airlines great comfort in evaluating their likelihood of success in contesting the fines, it did not relieve them of the obligation to do so if they believed the INS had wrongly interpreted BIA precedent. Nor did the notice, to the extent it conveyed potentially inaccurate information, reflect affirmative misconduct on the part of the INS such that plaintiffs' delay in contesting the fines should be excused. *See Drozd v. INS*, 155 F.3d 81, 90 (2d Cir.1998); *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994). In sum, the airlines had a duty to challenge the fines at the time they were assessed if they believed they were unfair or unlawful, and they may not reasonably rely on generalized assertions concerning BIA precedent in the notice of intention to fine as an excuse for not doing so.

## CONCLUSION

The decision by the district court is vacated in part and affirmed in part. We remand for the district court's consideration the question of which of the airlines' claims were challenged administratively in a timely fashion, such that an order to the BIA for a decision, or to the INS to forward the claims to the BIA for decision, under 5 U.S.C. § 706(1), is the appropriate remedy. As to those claims, we dismiss them here as unripe and thus beyond our jurisdiction, and that of the district court, to decide. We affirm the district court's ruling that the pre–1993 payments arising out of the transportation of non-immigrant aliens were voluntary and may not be recovered, as well as its ruling that the airlines' claims arising out of 1993–1994 claims that were canceled are mooted. In light of our determination that the majority of plaintiffs' claims were not properly be-

fore the district court, we do not reach plaintiffs' arguments with respect to the district court's denial of their motions to amend the complaint, for reconsideration, and for relief from judgment.

Each side shall bear its own costs.