**Louis MEISEL and the Louis Meisel Gallery, Petitioners,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant.**

**No. M8–85 (VM).**

United States District Court, S.D. New York.

May 23, 2002.

DECISION AND ORDER

MARRERO, District Judge.

Petitioner Louis K. Meisel and The Louis K. Meisel Gallery (collectively, "Meisel") filed the instant application as a miscellaneous motion to compel the Federal Bureau of Investigation (the "FBI"), as a third party, to produce its current and former agents for depositions in a state court proceeding (the "Application"). The FBI objected to the procedure and opposed Meisel's application. For the foregoing reasons, the Court denies the Application without prejudice.

### · I. BACKGROUND

The Application presents a discrete legal issue. Nevertheless, the Court's ruling can only be understood against the backdrop of this matter's unique procedural posture. Accordingly, the following is a detailed summary of the uncontested factual and procedural background. This summary is taken from Meisel's Application, the Declaration of Danna Drori, dated May 13, 2002, and their attachments.

In 1998, Edward Blumenfeld ("Blumenfeld") filed a complaint in the Supreme Court of the State of New York, New York County, against Meisel (the "State Litigation"). In that case, Blumenfeld alleges that Meisel committed fraud by selling mobiles it purported were created by the artist Alexander Calder ("Calder"), knowing such mobiles were fakes. Meisel deposed an expert witness for Blumenfeld, Alexander Rower ("Rower") who is the grandson of Calder and often employed to authenticate works attributed to Calder. Rower stated that he visited Meisel in 1989, saw a mobile attributed to Calder there (the "Mobile") and informed Meisel that he did not believe the Mobile was genuine. He stated that he also informed FBI agents Margo Dennady ("Dennady") and Catherine Begley ("Begley") of his opinion.

Meisel apparently "has reason to doubt" Rower's testimony and decided to seek information from the FBI that might refute it. (*See* Application, at ¶ 11.) The instant petition is one more step in the

forced march Meisel must take to obtain the information it seeks.

The first step Meisel took was to serve a subpoena duces tecum on the FBI on July 19, 2001 (the "July Subpoena") seeking documents relating to communications between Rower and Begley or other FBI agents that relate to the Mobile. The FBI did not comply with the July Subpoena on the ground that it, *inter alia*, violated the sovereign immunity of the United States.

Meisel's second step was to file a miscellaneous motion in this Court to compel the production of the documents contained in the July Subpoena. Before the matter was heard by Judge Sand, sitting in Part I, the FBI and Meisel entered into a stipulated dismissal pursuant to which the FBI agreed to produce documents. In addition, Meisel reserved its "right to make further application for depositions to authenticate the FBI Documents as needed." Stipulation and Order of Settlement, M18–303, slip. op. at 2 (S.D.N.Y. Mar. 5, 2002) (the "Stipulation").

The FBI first complied with the Stipulation by providing Meisel with one document. Meisel objected because it found the document to be irrelevant and unresponsive to its needs. The FBI provided Meisel with two additional documents. Unsatisfied, Meisel sought further assistance from Judge Sand pursuant to Local Rule 5(a), which provides that: "When a modification or further action on such determination is sought, it shall be referred to the judge who made the original determination even though said judge is no longer sitting in Part I." Judge Sand found that the FBI had complied fully with the Stipulation. He instructed that Meisel's "request for depositions is a new application which [Meisel is] free to make 'as the rules permit.'" Memorandum and Order, M18–303, slip op. at 3 (S.D.N.Y. Apr. 4, 2002).

Meisel's third step was, on April 5, 2002, to issue two more subpoenas duces tecum on the FBI seeking deposition testimony from Dennady and Begley (the "Subpoenas"). The Subpoenas were issued from the State Litigation. By letter from the FBI's Chief Division Counsel, Steven A. Carlotto, to Gerald E. Singleton dated April 11, 2002 (the "April Letter"), the FBI informed Meisel that it would not comply with the Subpoenas because Meisel had not satisfied applicable procedural regulations.[1] In particular, the FBI stated it was not authorized to disclose the requested information because the Subpoenas: (1) were issued by a state court and thus jurisdictionally invalid; (2) did not explain how the information requested is relevant to the underlying litigation and thus did not satisfy Touhy Regulations; (3) violated the Privacy Act; (4) were barred by *res judicata*, and because Begley was no longer employed at the FBI.

Meisel's fourth step was to file the Application. Meisel filed the Application pursuant to the Privacy Act, 5 U.S.C. § 552a(b)(11), and the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.* (the "APA"), arguing that the April Letter is an arbitrary and capricious final agency action. As relief, Meisel requests that the Court issue an order "directing the FBI to comply with the Subpoena and to produce FBI Agents Dennady and Begley for deposition." (Application, at 15.) The Applica-

---

1. In response to the Supreme Court's decision in *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 468, 71 S.Ct. 416, 95 L.Ed. 417 (1951), as codified at 5 U.S.C. § 301, agencies of the United States government drafted procedural rules to govern requests for informa-

tion from them and the agency's determination of whether it will release the information. Meisel and the FBI acknowledge that Meisel's request must be made pursuant to the regulations found at 28 C.F.R. § 16.21 *et seq.* (the "Touhy Regulations").

tion was assigned to this Court, sitting in Part I.

The FBI filed numerous objections and oppositions to Meisel's miscellaneous motion. Meisel filed letter briefs in reply. On May 15, 2002, the Court held a hearing to determine its jurisdiction and address the parties' arguments. Following that hearing, the parties supplemented their oral arguments with additional letter briefs.

At the Hearing, also, Blumenfeld sought to intervene pursuant to Fed.R.Civ.P. 24(a). Meisel consented to the intervention but the FBI objected. On the record, Blumenfeld explained his interest in the proceeding, informing the Court that he sought only "reciprocity or parity" rights to be present at the depositions of Dennady and Begley, if ordered. (Tr., at 39–41.) Based on these representations the FBI withdrew its objection. (Tr., at 41–42.) The Court granted Blumenfeld's motion to intervene. (Tr., at 44.)

## II. DISCUSSION

The Court has reviewed the parties' submissions and provides the following summary as a guide to their positions and arguments. Meisel argues that it made a proper request under the Touhy Regulations and may proceed by miscellaneous motion to commence an action pursuant to the APA to enforce its rights. Meisel seeks deposition testimony as relief.

The FBI's primary objection is that Meisel should have proceeded by filing a complaint, thereby commencing an action pursuant to the Federal Rules of Civil Procedure. The FBI also opposes Meisel's motion on the grounds that: (1) the Application is barred by the doctrine of sovereign immunity; (2) the Application is precluded by *res judicata;* (3) Meisel failed to follow Touhy Regulations; and (4) there has been no final agency action on

which to base an APA action. The Court addresses each argument in turn.

### A. *Commencement of an Action Pursuant to the APA*

█ The Federal Rules of Civil Procedure instruct that the only "action" they provide for is a civil action, Fed.R.Civ.P. 2, that can be commenced only by filing a complaint. *See* Fed.R.Civ.P. 3. The Second Circuit, however, identified a circumstance whereby an APA action may be commenced without filing a complaint. *See Environmental Protection Agency v. General Electric Co.*, 197 F.3d 592 (2d. Cir.1999) ("*G.E.*"). In *G.E.*, the Second Circuit held that "the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance." *Id.* at 599. In that case, General Electric Co. ("GE") had requested documents from the Environmental Protection Agency ("EPA") as part of its discovery efforts in a litigation pending before the United States District Court for the District of New Jersey. The EPA declined to honor the subpoena. When GE moved to compel the subpoena by miscellaneous motion in the Southern District of New York, the EPA moved to quash it because, *inter alia*, GE should have filed a complaint under Federal Rule of Civil Procedure 3 to commence an APA action and obtain the necessary waiver of sovereign immunity. The district court agreed and dismissed GE's miscellaneous motion. The Second Circuit, however, reversed because "the district court interpreted 'action' in section 702 of the APA in too narrow a fashion for the purposes of this case." *G.E.*, 197 F.3d at 599. It remanded GE's miscellaneous motion for further proceedings.

The parties here focused their efforts on arguing and briefing the question of whether the *G.E.* decision permits Meisel,

a party in a pending state litigation, to obtain discovery from the FBI, as a third party to the State Litigation, by filing a miscellaneous motion seeking testimony and documents. The FBI opposes Meisel's use of this procedure because the expediency of proceeding by miscellaneous motion deprives the FBI of the lengthier time schedule to answer contained in the Federal Rules of Civil Procedure. (*See* Tr., at 28 ("[T]he government's main concern here is creating precedent of allowing State Court litigants to hail the FBI on an expedited basis in Part 1.")); *see also* Fed. R.Civ.P. 12(a) (defendant who waives summons has 60 days to answer complaint). The FBI did not identify any concrete harm or prejudice that would result from expedited review for state court litigants as well as federal court litigants. Rather, the FBI asserts that the distinction between enforcing a subpoena issued by a federal court in a pending federal litigation by miscellaneous motion and enforcing a subpoena issued by a state court in a pending state litigation is inherently determinative, requiring the Court to reject the Application as a Part I matter. As support, the FBI cites cases that were removed to federal court for enforcement of a state subpoena, only to be dismissed on the grounds of derivative jurisdiction. *See, e.g., Louisiana v. Sparks,* 978 F.2d 226, 235 (5th Cir.1992); *Houston Business Journal, Inc. v. Office of the Comptroller of the Currency,* 86 F.3d 1208, 1211–1212 (D.C.Cir.1996); *Fairfield v. The Houston Business Journal, Inc.,* H–93–1794, 1993 WL 742740, *1 (S.D.Tex. Sept.8, 1993); *Washington Consulting Group v. Monroe,* 00MS141, 2000 WL 1195290, *1 (D.D.C. July 24, 2000).

The Court, however, perceives that the procedural posture of this matter falls within the ambit of *G.E.* Meisel is a party to a pending litigation in which it seeks discovery from an agent of the government. Thus, Meisel's application is like GE's. The only difference is that Meisel's litigation is pending in state court.

Unlike the petitioners in the cases cited by the FBI, Meisel filed the Application as an action independent of the State Litigation. Meisel alleges that it made a proper request pursuant to the Touhy Regulations and that the FBI's denial of it was "arbitrary and capricious" and a violation of the Privacy Act. Thus, Meisel invoked federal question jurisdiction. *See* 28 U.S.C. § 1331. Neither Meisel nor the FBI removed the Subpoenas to federal court on diversity grounds and thus the Court's jurisdiction does not depend on that of the state court under the doctrine of derivative jurisdiction. Accordingly, the Court finds that Meisel properly commenced an APA action by miscellaneous motion pursuant to Local Rule 5 and *G.E.,* and accepts it as a Part I matter.

**B.** *Discovery From a Non–Party Agency of the United States*

**1.** *Enforcement of State Subpoena*

■ The FBI argues that this Court has no jurisdiction to enforce a subpoena issued by a state court. An objection to the Court's subject matter jurisdiction is appropriate. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) ("[A] nonparty witness can challenge the court's lack of subject-matter jurisdiction in defense of a civil contempt citation, notwithstanding the absence of a final judgment in the underlying action."). The Court's subpoena power does not extend beyond its jurisdiction over the underlying action. *See id.* (citing *United States v. Morton Salt Co.,* 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950)); Fed.R.Civ.P. 45. Here, the Court has no jurisdiction over the State Litigation. *See* 28 U.S.C. §§ 1331, 1332 and 1441. Accordingly, the Court cannot exercise its

own subpoena power over the Subpoenas as matters pending in the State Litigation.

### 2. *Res Judicata*

 The FBI argues that *res judicata* bars the Court from hearing Meisel's Application. According to the FBI, Meisel sought the same testimony in its first miscellaneous motion, which it settled, as it seeks in the Application. Because Judge Sand found the FBI to be in complete compliance with the Settlement, Meisel cannot bring a new action. Under "federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).

The Court is not persuaded by the FBI's argument because it mischaracterizes the record. First, by the Settlement's terms, Meisel "reserve[d] their right to make further application for depositions to authenticate the FBI Documents as needed" and contemplated that further evidentiary requests might be made. (*See* Stipulation, at 2 ("the FBI reserves its right to object to any and all future evidentiary requests made by [Meisel].").) Thus, Meisel may bring additional applications to obtain certain deposition testimony. The FBI's compliance with its obligation to provide documents, as was found by Judge Sand, does not affect any rights Meisel may have to depositions. Secondly, and as Judge Sand indicated, the Subpoenas represent new requests for information from the FBI. It would not be reasonable or in the interests of justice to hold that the settlement encompassed all future requests for information where the need for such additional information was anticipated in the settlement and in fact arose after the FBI disclosed its documents.

### · 3. *Compliance With Touhy Regulations and Final Agency Action*

Meisel submitted the Supbeonas requesting oral evidence, accompanied by a "Statement of Scope and Relevancy," on April 5, 2002. As such, Meisel made a request for information under the Touhy Regulations.

 An APA action may be pursued only where there has been a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review of the final agency action." *Id.* If an agency action is not final, a district court lacks jurisdiction because the matter is not ripe for judicial review. *See Air Espana v. Brien,* 165 F.3d 148, 152 (2d Cir.1999) (citing *DRG Funding Corp. v. Secretary of Housing and Urban Development,* 76 F.3d 1212, 1214 (D.C.Cir.1996)). An action's finality is not determined by the agency's semantic characterization, but by an evaluation of "whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); *Aquavella v. Richardson,* 437 F.2d 397, 404–05 (2d Cir. 1971). A final agency action is not "of a merely tentative or interlocutory nature." *Bennett v. Spear,* 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

 The FBI argues that, in the April Letter, it expressly reserved its rights to evaluate Meisel's request for information submitted pursuant to the Touhy Regulations. The April Letter identifies certain requirements that Meisel must meet before the FBI would consider the request.

In its brief, the FBI discusses the required "Statement of Scope and Relevance" which it identified as a barrier to its consideration of the request as an "example" of why the April Letter does not represent a final agency action. (*See* Memorandum of Law in Opposition to Petitioners' Motion to Compel (the "Opposition"), at 17.)

Meisel, then, could address that defect by providing additional information regarding the relevancy of certain requested information, thus completing its request. *See* 28 C.F.R. § 16.24. It appears from the FBI's argument that upon receiving the requested additional detail the FBI would be in a position to determine "whether it would be appropriate to disclose the requested information." (April Letter, at 2.) The FBI's decision at that point would constitute a final agency action.

However, the Opposition does not address the other objections identified in the April Letter, which add twists and turns to Meisel's path. The FBI's assertion of these additional hurdles in its April Letter, and silence in the Opposition, suggest that the FBI is not particularly concerned with resolving what appears to the Court to be an innocuous request for information. The rules apparently permit this strategy. *See, e.g., The D.C. Circuit Review: State Litigant Denied Use of Federal Subpoena,* 65 Geo. Wash. L.Rev. 693, 698–99 (1997).

One remaining objection is that Meisel did not provide the FBI with a jurisdictionally valid subpoena. Meisel attempts to address that defect by filing an APA action; as such, the FBI cannot argue that its decision is not final because the Subpoenas were issued from the State Litigation.

■ A second remaining objection is that the request violates the Privacy Act. The Court infers that this objection relates to its other objection that Begley is no longer employed at the FBI. In the April Letter, the FBI asserted that it lacks authority to comply with the Subpoenas regarding Begley without her permission or a Court order. Nevertheless, the Touhy Regulations require Meisel to obtain the FBI's permission to obtain information from Begley. *See* 28 C.F.R. 16.22. Therefore, the FBI cannot sidestep Meisel's request and must address it in its final agency action.

Finally, the third remaining objection was based on *res judicata.* The Court already addressed and denied this objection. (*See supra,* discussion at Part II. B.2.) Thus, the remaining obstacles to resolving Meisel's request are that the FBI must clarify its position regarding the Privacy Act and Meisel must provide additional information regarding the scope and relevancy of the information requested.

The Court finds that the FBI has not yet issued a final agency action on the request for information filed by Meisel under the Touhy Regulations. At this stage, therefore, the Court lacks jurisdiction to address the merits of Meisel's Application. *See Air Espana,* 165 F.3d at 152.

There is no indication of how long the process of satisfying the FBI will take. Meisel has indicated that it obtained extensions of time in the State Litigation and may require additional adjournments. (Tr., at 22–23.) The Touhy Regulations recognize that the time an agency requires to make its decision may cause delay and prejudice to a petitioner by obligating an agency to request a stay on a petitioner's behalf. *See* 28 C.F.R. § 16.26 ("If response to a demand is required before the instructions from the appropriate Department official are received, the responsible official or other Department attorney designated for the purpose [to] appear and furnish the court or other authority with a copy of the regulations . . . and inform the court or other authority that the demand

has been or is being, as the case may be, referred for the prompt consideration of the appropriate Department official and shall respectfully request the court or authority to stay the demand pending receipt of the requested instructions.").

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Blumenfeld's motion to intervene is granted; and it is further

ORDERED that Meisel's Application is denied without prejudice; and it is finally

ORDERED that the miscellaneous matter is closed.

SO ORDERED.