**Carlos FERREIRA, Petitioner,**

v.

**UNITED STATES of America and David Kelly, United States Attorney for the Southern District of New York, Respondents.**

**No. M–18–303–VM.**

United States District Court, S.D. New York.

Dec. 29, 2004.

*DECISION AND ORDER*

MARRERO, District Judge.

This matter is before the Court, sitting in Part I, as a motion seeking the disclosure of specifically requested materials in the possession of the United States Attorney's Office for the Southern District of New York ("USAO") for use at the sentencing of Carlos Ferreira ("Ferreira"), a defendant in a New York State criminal proceeding (the "Motion").[1] Ferreira brought to the attention of the USAO, and cooperated in their investigation of, an allegedly corrupt detective of the New York City Police Department ("NYPD"). Ferreira now seeks evidence relating to his cooperation in that investigation as material relevant under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) *("Brady")* to reducing his sentence in the state proceeding. The Government challenges Ferreira's ability to recover the requested materials in this action.[2]

---

**1.** The case is captioned *People v. Ferreira,* No. 7972–2000, and is proceeding in Part 70 of New York County Supreme Court. Although Ferreira was previously scheduled to be sentenced on November 18, 2004, his counsel informed the Court by telephone that the sentencing has been adjourned until January of 2005.

**2.** The parties filed letter briefs to the Court in addition to Ferreira's initial Memorandum, filed with the Motion. The Court has consid-

This Court finds initially that it does not have jurisdiction to consider Ferreira's *Brady* claim, as Ferreira does not have standing to bring such a claim against the USAO. If the Motion is construed instead to be a claim for relief from arbitrary administrative action, this Court finds that Ferreira's claim is not ripe for this Court's consideration because he has not sought or received final federal agency action on this claim. Ferreira also may not recover the materials requested in the Motion under Federal Rule of Criminal Procedure 6(e), as the materials are not subject to Rule 6(e)'s protections or procedures, nor has Ferreira obtained the USAO's consent to utilize the materials.

Ferreira may, however, be able to recover some of the requested materials under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)"). The Court, therefore, invites Ferreira to submit a motion under Rule 41(g) and the parties to submit additional briefing on this issue, should Ferreira desire to pursue the matter. Alternatively, Ferreira may follow proper administrative procedures for obtaining the requested materials and appeal that administrative decision if he is aggrieved by it.

ered the following submissions in ruling on the matters set forth in the Motion: Ferreira's Motion for an Order to Show Cause, including the Affirmation of Ernest H. Hammer, dated November 15, 2004 ("Hammer Aff."), with Exhibits A and B attached thereto, and the accompanying Memorandum of Law filed on November 16, 2004 ("Pl.Mem."), these documents collectively identified hereinafter as the "Motion"; the Government's letter dated November 22, 2004; Ferreira's letter dated November 24, 2004; the Government's letter dated December 1, 2004; and Ferreira's letter dated December 7, 2004. Except where specifically referenced, no further citation to these sources will be made.

3. The following facts are taken from Ferreira's submissions. Although the USAO noted in its letter briefs that it does not agree

## I. BACKGROUND [3]

### A. FERREIRA'S INVOLVEMENT WITH THE SPECIAL NARCOTICS PROSECUTOR'S OFFICE

Ferreira was arrested on November 18, 2000 along with several others by members of the NYPD and federal agents in connection with a wiretap investigation by the Special Narcotics Prosecutor's Office for the City of New York ("SNPO") [4] into alleged sales of controlled substances by the "Juan Palacios Organization." As a result, Ferreira was charged with violations of the New York State Penal Law ("NYSPL") concerning the criminal sale of controlled substances, including § 220.43, criminal sale of a controlled substance in the first degree, which is an A–1 felony.

Upon his arrest, Ferreira offered to cooperate with the SNPO in its investigation of drug sales. He entered into a formal Plea and Cooperation Agreement with the SNPO on or about December 18, 2000. Ferreira was assigned to work with Detective Yanko Rosado ("Rosado") of the SNPO and his team to investigate other drug crimes. During the time that Fer-

with the representations made in Ferreira's submissions, in particular those made in Exhibit B regarding the extent of Ferreira's assistance to the Government (*see* Letter from AUSA William Craco to the Court, dated Nov. 22, 2004, at 1 n. 1.), the Government did not indicate in any detail the facts with which it disagreed. The facts as stated in the Government's submissions, furthermore, substantially coincide with those submitted by Ferreira. Finally, any factual dispute between the parties is inapposite to the Court's ruling on the present Motion.

4. According to Ferreira's counsel, the SNPO is a joint federal and state investigatory body, including officers from the NYPD and federal DEA agents. (*See* Pl. Mem. at 9; Ex. B at 2, 7–8.)

reira worked with Rosado, numerous arrests and seizures of contraband were made.[5]

## B. FERREIRA'S ALLEGED ASSISTANCE TO THE USAO

While cooperating with the SNPO, Ferreira allegedly was approached by Rosado to engage in illegal activity on his, Rosado's, behalf. Ferreira alleged that he received several checks, including federal tax return checks (the "IRS checks"), from Rosado that Rosado had retrieved from individuals he arrested. Rosado asked Ferreira to cash those checks for him, and to bring him the proceeds. Ferreira stated that he brought this activity to the attention of the USAO, that he gave representatives of the USAO the stolen checks, and that the USAO retained those checks in its possession. Rosado also allegedly asked for and received from Ferreira several thousand dollars in cash, which Ferreira gave him partially in contemplation of Rosado helping to get Ferreira's wife out of prison.

Ferreira claims that, prior to bringing the IRS checks to the USAO's attention, he had collected evidence of Rosado's illegal schemes on his own, including making tape recordings of phone conversations with Rosado. After he turned over the IRS checks, according to Ferreira, the USAO began an official investigation into Rosado's alleged illegal conduct, and brought in officers from the NYPD Internal Affairs Bureau to assist in its investigation. The investigation culminated in an audio- and video-taped meeting in Ferreira's car with Rosado, which was monitored by the USAO and NYPD. After this meeting, however, Rosado was tipped off that he was under surveillance, and confronted Ferreira about the meeting in the car. Ferreira alerted the USAO to Rosado's behavior. Ferreira was not involved in any further surveillance operations after this incident, although Ferreira and his wife met with investigators and attorneys from the USAO to discuss the case. The USAO states in its submissions to the Court that it decided not to prosecute any of the individuals involved based on the allegations and evidence provided by Ferreira.

## C. FERREIRA'S PETITION TO THIS COURT

Ferreira filed the Motion on November 16, 2004, seeking to recover from the USAO:

(a) Copies of recorded telephonic communications between Ferreira and Rosado made by Ferreira and given to the USAO;

(b) Copies of recorded telephonic communications between Ferreira and Rosado made and retained by the USAO;

(c) Copies of the face and endorsement sides of the money order and the two IRS checks that Rosado allegedly stole from his arrestees and gave to Ferreira to cash and, thereupon, sought the "proceeds" thereof, and which Ferreira delivered to the USAO;

(d) A copy of the June 6, 2001 video film and audio recording that allegedly document the payment by Ferreira and acceptance by Rosado of the "proceeds" of an IRS tax refund check earlier stolen by Rosado from an arrestee of his while under surveillance of personnel of the USAO and the NYPD Internal Affairs Bureau.

5. There is some dispute between the State prosecutor and Ferreira about the extent to which Ferreira's assistance played a role in the arrests made. (See Pl. Mem. at 2–3.)

(*See* Hammer Aff. at 4) (the "requested materials").[6] Ferreira wishes to use these materials, which show his assistance to the federal government in investigating Rosado, as evidence in his state court sentencing proceeding that he believes would lessen his sentence for the aforementioned NYSPL violations. Ferreira argues that this material should be turned over to him, and that any failure to do so constitutes a violation of the Due Process Clause under the doctrine articulated in *Brady*. Although the USAO has sent two letters to the State prosecutor allegedly explaining Ferreira's cooperation with that office, Ferreira states that these are insufficient as evidence of his cooperation, in that the letters do not disclose the details of Rosado's allegedly corrupt actions and Ferreira's cooperation in uncovering this corrupt detective.

The Government contends that the documents and recordings Ferreira seeks do not constitute *Brady* material, in that the evidence will not tend to exculpate him, nor would it assist him in cross-examining any witness. Furthermore, the Government notes that in filing the Motion Ferreira has attempted to sidestep existing administrative procedures for obtaining the requested materials. Finally, the Government contends that the materials in question are subject to various privileges, including a qualified common-law privilege over law enforcement investigatory files and the attorney work product doctrine.

Additionally, the Government claims that Ferreira has not demonstrated a basis for this Court's subject matter jurisdiction over his Motion, in that the federal government has not waived immunity from suits such as the instant action. In response, Ferreira raises an entirely new basis for

this Court's jurisdiction as well as new grounds for it to require the USAO to turn over the requested materials: that the USAO issued grand jury subpoenas in the course of investigating Rosado, that this Court has jurisdiction as a result of that grand jury proceeding, and that the requested materials should be disclosed under the standards governing the disclosure of grand jury physical evidence.

## II. DISCUSSION

### A. SOVEREIGN IMMUNITY

 The Government raises the issue of whether this Court has subject matter jurisdiction to hear Ferreira's Motion given that the United States has not waived its sovereign immunity from such claims. The Court is persuaded that subject matter jurisdiction exists. The Motion raises claims asserting a federal question arising under the Constitution of the United States, *see* 28 U.S.C. § 1331, namely that the USAO has an obligation arising under the Due Process Clause and *Brady* to disclose certain materials to Ferreira for use at his sentencing. The Government is not immune from such suits. 28 U.S.C. § 1346(a)(2) ("The district courts shall have original jurisdiction ... of ... [a]ny ... civil action or claim against the United States, not exceeding $ 10,000 in amount, founded ... upon the Constitution."). Therefore, the Government's objections to this Court's jurisdiction are inapposite.

### B. STANDING

 Although not persuaded by the Government's arguments against the Court's subject matter jurisdiction, the Court has an independent obligation to examine its own jurisdiction to hear a

---

6. Ferreira clarified in his letter reply to the Government's objections that he was not requesting any agent's notes or attorney work product that would be subject to a claim of privilege. (Letter from Ernest Hammer to the Court, dated November 23, 2004, at 3.)

claim. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines,' " quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The Court finds that in this case it lacks jurisdiction because Ferreira does not have standing to bring a *Brady* claim against the USAO.

■ "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'.... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' ... Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Ferreira has the burden of establishing his standing to bring the Motion. *Id.* at 561, 112 S.Ct. 2130.

Ferreira satisfies the first prong of this analysis, as the injury he fears, being sentenced without the state court's consideration of the full extent of his cooperation due to the failure of the prosecutor to disclose *Brady* material, is imminent. *See id.* at 560, 112 S.Ct. 2130. He is scheduled to be sentenced in January of 2005.

However, Ferreira has not shown in his pleadings how this injury is causally connected to any conduct of the USAO arising under the Government's *Brady* obligations, and therefore fails to satisfy the second prong of the standing doctrine. The Supreme Court in *Brady* identified the prosecutor in the criminal prosecution of the defendant as the "architect of [the] proceeding," suggesting that the obligation to produce *Brady* material is on the particular prosecutor in the criminal case, and not on a third party unconnected with the underlying prosecution. *See Brady,* 373 U.S. at 87–88, 83 S.Ct. 1194; *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) ("The *Brady* obligation extends only to material evidence ... that is known to the prosecutor."). Thus, in this instance, the *Brady* violation, if in fact any would occur,[7] would be committed by the New York State District Attorney who is prosecuting Ferreira, not by the United States Attorney who has merely refused to hand over materials to Ferreira. The *Brady* violation, therefore, is not causally connected to the conduct of the USAO.

Ferreira has not presented facts in his pleadings to warrant this Court extending to the USAO the state prosecutor's responsibility to turn over *Brady* material. This Court has been unable to find any case holding the federal Government in violation of *Brady* for not turning over information to a state prosecutor in a state criminal proceeding with which the Government has no direct involvement whatsoever. Although there may be circum-

---

**7.** Ferreira, to make out a claim under *Brady* against the New York State prosecutor, would have to establish that he or she had some knowledge of the requested materials' existence. The Second Circuit, however, has expressly refused to impute the knowledge of a Florida prosecutor involved in an entirely separate criminal proceeding on a United

States Attorney in New York, rejecting the argument for such imputation as a "completely untenable position that 'knowledge of any part of the government is equivalent to knowledge on the part of [the] prosecutor.' " *United States v. Quinn,* 445 F.2d 940, 944 (2d Cir.1971).

stances under which such imputation of *Brady* duties would be permissible, such as where prosecutors from multiple jurisdictions work together on the prosecution itself, *see, e.g., United States v. Abrams,* 205 F.3d 1325, 1999 WL 1295935, at *2–3 (2d Cir.1999) (noting that cooperation between Assistant United States Attorneys in the Southern and Eastern Districts of New York in the prosecution of the defendant through the sharing of evidence and information presented a close question as to whether knowledge should be imputed between the prosecutors), Ferreira has failed to plead facts in this case warranting such an imputation of responsibility.

█ In the Motion, Ferreira alleges that NYPD officers and federal DEA agents worked together in the SNPO, the fruits of which investigation led to Ferreira's arrest and prosecution; and that federal agents and the NYPD Internal Affairs Bureau worked together to investigate the alleged criminal activity of Rosado, from which investigation the requested materials were produced. In an attempt to link these two investigations for the purposes of *Brady,* Ferreira cites cases involving joint federal and state investigations where the court imputed of knowledge for the purposes of *Brady,* for example, on a federal prosecutor where the *Brady* information was held by a member of her "prosecutorial team," such as a state agency involved in the investigation behind the federal prosecution. *See, e.g., United States v. Antone,* 603 F.2d 566, 569–70 (5th Cir.1979) (noting that the court focused "upon the 'prosecution team' which includes both investigative and prosecutorial personnel."). Although a federal agency was a part of the "prosecutorial team" behind Ferreira's conviction on the state drug charges, this agency, the DEA, is not being sued in the Motion, nor does it possess the requested materials. The re-

quested materials grew out of the wholly separate state and federal investigation into Rosado's alleged illegal conduct, which involved cooperation between the USAO and the NYPD Internal Affairs Bureau. Although there is an attenuated connection between these two investigations, in that Rosado's alleged illegal conduct occurred during Ferreira's cooperation with the SNPO's investigation of drug trafficking, this relationship is not sufficient to make the USAO and the state prosecutor members of the same "prosecutorial team" in connection with Ferreira's conviction. Thus, Ferreira has not shown a sufficient connection between the state prosecutor and its charges against Ferreira for Ferreira's violations of the NYSPL, and the USAO and its investigation into the potential prosecution of Rosado. In fact, Ferreira has stated that the USAO has not shared information with the state prosecutor with respect to the Rosado investigation, and that this lack of cooperation and failure to disclose information about Rosado is what led to Ferreira's filing of the Motion.

Under proper application of the *Brady* doctrine, the appropriate party against which Ferreira should bring his *Brady* claim is the state prosecutor, and not the USAO. Ferreira, therefore, does not have standing to bring this claim. Accordingly, this Court does not have jurisdiction over it.

C. *ADMINISTRATIVE RELIEF AVAILABLE UNDER THE "TOUHY" REGULATIONS*

█ Although not pled as such, Ferreira's claim may alternatively be construed as a request for relief from arbitrary administrative action on the part of the USAO in not providing him with the requested materials. *See* 5 U.S.C. §§ 702, 703. The United States is not immune

from such a suit, and this Court may hear such a claim. 5 U.S.C. § 702. Ferreira, however, has not followed the appropriate administrative procedure for obtaining the materials, or received final federal agency action on his request. As a result, his claim is not ripe for this Court's consideration. *See* 5 U.S.C. § 704; *Meisel v. FBI*, 204 F.Supp.2d 684, 689 (S.D.N.Y.2002).

To obtain materials from the Department of Justice, of which the USAO is a part, Ferreira must comply with the so-called "Touhy" regulations, found at 28 C.F.R. §§ 16.21 et. seq.[8] The first step that Ferreira must take is to make a formal demand on the USAO for the requested materials. "Demand" is defined in the regulations as "a subpoena, order, or other demand ... of a court or other authority ... issued for such material or information." 28 C.F.R. § 16.21(a)(2). "Such a demand would ordinarily take the form of a subpoena. While principles of sovereign immunity preclude actions to enforce state-court subpoenas against the United States, those principles do not preclude issuance of such subpoenas, and the Touhy regulations, authorizing responses to demands for information from state courts, clearly contemplate that subpoenas may issue." *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir.2001) (internal citations omitted); *see Meisel*, 204 F.Supp.2d at 689.

Ferreira must make a demand upon the USAO for the requested materials, a task that may be accomplished by issuing a subpoena duces tecum on the agency. The Touhy regulations recognize that the time an agency requires to make its decision may cause delay and prejudice to a petitioner, and therefore the regulations expressly obligate an agency to request a stay on a petitioner's behalf. *See* 28 C.F.R. § 16.27 ("If response to a demand is required before the instructions from the appropriate Department official are received, the responsible official or other Department attorney designated for the purpose shall appear and furnish the court or other authority with a copy of the regulations ... and inform the court or other authority that the demand has been or is being, as the case may be, referred for the prompt consideration of the appropriate Department official and shall respectfully request the court or authority to stay the demand pending receipt of the requested instructions."). Once Ferreira has followed the procedures under the Touhy regulations, and received final federal agency action in response to his request, he could seek review of the USAO's decision, should it fail to comply with his demand, in the district court. *See* 5 U.S.C. §§ 702, 704. However, Ferreira has not received such final agency action, and therefore this Court lacks jurisdiction to address the merits of Ferreira's application under this procedure. *See Meisel*, 204 F.Supp.2d at 690 (citing *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir.1999)).

## D. *PRODUCTION OF GRAND JURY MATERIALS*

Ferreira further argues that (1) this Court has subject matter jurisdiction over actions to disclose matters before a grand jury; and (2) that the requested materials should be disclosed because Ferreira has met the appropriate standard for the disclosure of grand jury evidence. *See* Fed. R.Crim.P. 6(e)(3)(E)(1), (e)(3)(F) ("Rule

---

**8.** In response to the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468, 71 S.Ct. 416, 95 L.Ed. 417 (1951), as codified at 5 U.S.C. § 301, agencies of the United States government drafted procedural rules to govern requests for information from them and the agency's determination of whether it will release the information.

6(e)"). The Court is not persuaded by this argument.

■ Rule 6(e) "prohibits, with certain specified exceptions, the disclosure of 'matters occurring before the grand jury.'" *DiLeo v. Commissioner*, 959 F.2d 16, 18 (2d Cir.1992). Rule 6(e) lists several exceptions to this general prohibition on the disclosure of grand jury material, one of which applies when the grand jury materials are sought "preliminarily to or in connection with a judicial proceeding." Fed. R.Crim.P. 6(e)(3)(E)(i). It is under this provision that Ferreira seeks the disclosure of the requested materials. However, Ferreira need not argue for their disclosure under the harsh standards applied in Rule 6(e) cases because the materials are not "matters occurring before a grand jury."

The Second Circuit has defined what constitutes "matters occurring before the grand jury," which are subject to the protections of Rule 6(e), and has excluded from that category of protected material any "testimony or data [that] is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation— rather than to learn what took place before the grand jury." *DiLeo*, 959 F.2d at 19–20 (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). In *DiLeo*, the petitioners were taxpayers who had been adjudged in Tax Court as being liable for deficiencies in their federal income taxes, a judgment that they contended was based largely on documents that had been previously subject to a grand jury subpoena. *See DiLeo*, 959 F.2d at 17. The taxpayers claimed that the admission of those documents into evidence against them was in error, as the IRS obtained the documents without following the procedures outlined in Rule 6(e) for the disclosure of "matters occurring before the grand jury." *Id.* at 18, 19. The Second Circuit found that the records admitted in Tax Court by the IRS against the petitioner-taxpayers were not subject to the protections of Rule 6(e) because the IRS received the records, which had been submitted to a grand jury, with all references to the grand jury removed, and had sought the records "for their own sake and not to learn what took place before the grand jury and clearly did not compromise the secrecy of the grand jury's deliberations." *DiLeo*, 959 F.2d at 20. The Circuit Court stated that "[u]nder *Interstate Dress*, the records were not 'matters occurring before the grand jury' within the meaning of Rule 6(e)" and that therefore the disclosure of those records was not governed by Rule 6(e)'s procedures for disclosure. *Id.* ("[T]he express terms of Rule 6(e) require a court order only to permit disclosure of material that falls within that category[, that category being 'matters occurring before a grand jury']."). The court went on to state that "[i]n *Interstate Dress* ... this court specifically addressed the requirements for disclosure of matters not occurring before the grand jury and noted that 'documents produced pursuant to a grand jury subpoena remain the property of the person producing them ... and their inspection by persons other than the grand jury and the prosecuting attorneys is therefore dependent upon the consent of the owner or upon a court order.'" *Id.*

Therefore, under *DiLeo* and its interpretation of *Interstate Dress*, evidentiary materials submitted to a grand jury do not constitute "matters occurring before a grand jury" within the meaning of Rule 6(e) when those materials are sought for disclosure for their own sake or intrinsic value. When sought as such, the materials are not subject to the procedures for disclosure prescribed under Rule 6(e); instead, the seeker can obtain the materials

by merely requesting either (a) the consent of the owner of the materials or (b) a court order for their use. *See id.* at 19–20.

In this case, Ferreira has stated no interest in the substance of the proceedings before the grand jury concerning its investigation of Rosado; he merely wants the documents for their intrinsic value for use in his own state sentencing proceeding. Thus, Ferreira's examination of the requested materials would not fall within the purview of Rule 6(e), and would not be subject to its procedures for disclosure, nor its strict limitations on the same.

If the documents are not subject to the protections of Rule 6(e), then the party seeking their disclosure must obtain the consent of the owner of the documents or a court order. *See Interstate Dress,* 280 F.2d at 54. Therefore, Ferreira must obtain the consent of the USAO for the perusal of the materials.[9] As discussed in Section II.C above, Ferreira has not properly sought the consent of the USAO for the requested materials, and, as discussed in Section II.B, this Court does not have jurisdiction to order the USAO to turn over the requested material under *Brady.* Because the disclosure of the materials is not governed by Rule 6(e), and there has been neither consent from the USAO, nor proper grounds for the Court to order disclosure, Ferreira's remaining course of action to obtain the requested materials may be to follow the procedures described previously and below.

E. *POSSIBILITY OF RECOVERY OF CERTAIN MATERIALS UNDER RULE 41(G)*

Ferreira may potentially be able to recover a portion of the materials requested in the Motion under Federal Rule of Criminal Procedure 41(g), "Motion to Return Property." Although the parties have not addressed this issue in their briefs, the Court notes that the opportunity exists for Ferreira to submit a motion for the return of any property now in the Government's possession that may be his, should he desire to pursue this course of action.

■ Rule 41(g) allows a party who has been aggrieved by the deprivation of property to make a motion for its return, even when the property has been lawfully seized by the government. *See* 3A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 673 (3d ed.2004). This Court would have equitable jurisdiction over such a motion, as it would not be brought as an ancillary motion to a pending criminal case. *See Elfand v. United States,* No. 03 CV 3769, 2004 WL 2567211, at *1 (E.D.N.Y. Nov. 8, 2004) (stating that where "there are no criminal proceedings currently pending against Petitioner, Petitioner's motion is construed as a civil action in equity," and citing *Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992)). This motion, however, could only be for the return of any portion of the materials that in fact may be *Ferreira'*s property being held by the USAO. For example, Ferreira arguably may be the rightful owner of the tapes that he allegedly created and turned over to the USAO. Ferreira could not seek the return of property that was not his, for instance, any tapes or recordings made by the Government, or the checks allegedly stolen by Rosado. *See Bova v. United States,* 460 F.2d 404, 407 (2d Cir.1972) ("Telephone conversations are not 'property' in the ordinary meaning of language, nor is there any effective method for their 'return.' It is

---

**9.** This result may not be the case for whatever portion of the requested materials might be considered Ferreira's own property, which would therefore be subject to production under Rule 41(g). *See* Section II.E below.

obviously impossible to excise and surrender to the appellants the memories of the agents who conducted the interceptions, *and the tapes and logs, as tangible items, are the Government's property, not the appellants'.*" (emphasis added)); *see. also In re Vigorito,* 499 F.2d 1351, 1354–55 (2d Cir.1974) ("[T]elephone conversations are not 'property' as that term is used in Rule 41(e) [, which is now Rule 41(g) ].").

## III. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the motion of petitioner Carlos Ferreira ("Ferreira") is DENIED, without prejudice to his bringing a future proceeding under 5 U.S.C. § .702 for recovery of the materials requested after having followed the applicable administrative regulations as stated at 28 C.F.R. § 16.21 et. seq.; it is further

ORDERED that this Order does not preclude Ferreira from filing a motion under Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)") to the extent applicable to any portion of the materials involved in this application, and that the parties shall have the opportunity to submit additional briefing to the Court on the issue of whether any of the requested materials may be recoverable thereunder; and it is finally

ORDERED that, should Ferreira elect to file a motion under Rule 41(g) and pursue additional briefing on that issue, the parties submit a briefing schedule to the Court no later than December 30, 2004.

SO ORDERED.